MASSUERE, Respondent, vs. DICKENS, Appellant.

*November 2 — November 22, 1887.*

*Libel:* "*Skunk*" *actionable per se: Evidence: Damages: Instructions to jury: Expression of opinion: Reversal of judgment.*

1. Plaintiff published in a newspaper "a card" stating that certain persons named, including the plaintiff but not the defendant, had purchased a new coat for a man who had lost his coat while helping to save the defendant's store from destruction by fire. Defendant published a reply, in which he denounces the plaintiff "as only fit to be classed with that repulsive order of creation, the *Mephitis Americana*," and, lest the plaintiff should be "unable to comprehend the appellation applied to" him, translates, "*skunk* — a thing as repulsive to the finer sensibilities of man as your low insinuations and business practices are to your fellow-townsmen." *Held:*
    (1) The publication by defendant was libelous *per se.*
    (2) Plaintiff's "card" was admissible in evidence in mitigation of punitive damages. But evidence of what the plaintiff said to a third person whom he asked to contribute towards purchasing the coat was not admissible, it not appearing that the defendant knew of such conversation when he published the reply.
    (3) Evidence as to the plaintiff's reputation "for meddling, making insinuations in regard to competitors in business" was inadmissible.

(4) It was not error to instruct the jury that to publish in a news-paper that· a man is a skunk, "if it is intended, *as it ordinarily would be,* . . . to render him ridiculous or odious," is libel; or that to publish in a newspaper that a man is guilty of low business practices, "meaning to have it understood that in his business he is unfair and disreputable or dishonest, is libelous" — the question of intention being left to the jury.

(5) Nor was an instruction in which it was assumed that defendant called plaintiff a skunk and *disreputable in his business practices,* such a departure from the language of the libelous publication as to work a reversal.

2. In charging the jury the court spoke of the plaintiff's card as a "mere piece of egotism." The plaintiff had a verdict for $1,000, but by direction of the court remitted one half thereof. *Held,* that under such circumstances the expression of an opinion by the court upon a fact relating wholly to the mitigation of punitive damages, would not work a reversal.

APPEAL from the Circuit Court for *Trempealeau* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for damages for the publication of the following alleged libel:

"MASSUERE'S 'CARD' ANALYZED.

"I noticed in the Republican and Leader of November 26th a 'card' (?) from *W. P. Massuere,* referring to the recog-nition for the heroic services of John Kline in the late fire, in which he ungentlemanly and maliciously reflects upon the honor and manhood of myself.

"In self-protection I desire to state that the proximity of my buildings and lumber to the fire and other business houses, necessitated the saving of my property to protect the town. Had my buildings burned, no power at our com-mand could have saved the entire village from destruction. One of the very first to have gone is the concern in which *Mr. Massuere* is interested. Hence the fight was made for very many others and not for me alone, as *Mr. M.* seems unprincipled enough to reflect.

"In regard to raising money to replace the coat said to have been lost by Mr. Kline, it appears that Mr. Kline went to *Mr. Massuere* to purchase a coat immediately after the fire; no coat could be found suitable in his stock, and they together went over to Bohrie Bros. & Maurer's, where one was obtained. The presentation of the coat to Mr. Kline, *gratis*, was only a just recognition of his services, and creditable to the gentlemen who contributed. But the solicitation was done by some one, probably by *Massuere*, very silently. He never solicited from me nor even mentioned the subject to me in any way, hence I had no chance to contribute to that particular fund. But I feel confident that upon a comparison of time it will be found that I had handed to Mr. Kline a money consideration, before a cent was subscribed by any man for the coat, and I think a sum very nearly the value of the coat; hence not wholly devoid of appreciation for valiant services. This much to the public in defense of my honor, and I know 'tis sufficient to the fair-minded, certainly to those who may know the situation.

"Now to *Mr. Massuere*, I desire to frankly say your stab is unprovoked and unmerited. I resent it as an act on your part devoid of principle, honor, and manhood. In no respect do I stand in your shadow or that of any other man in this community in response to merited charity or public enterprise. Considering your low, mean, dirty, uncalled for thrust, you must lose all self-respect, and I denounce you as only fit to be classed with that repulsive order of creation, the *Mephitis Americana.*

" If your ignorance is as limited as your sense of manhood, honor, and decency appears to be, you will be unable to comprehend the appellation applied to you, and to save you the further humiliation of seeking light from your neighbors, I will translate for your benefit: SKUNK,— a thing as repulsive to the finer sensibilities of man as your low insinuations and business practices are to your fellow-townsmen.

[Signed]                    "R. L. DICKENS."

The card therein referred to is as follows:

"A CARD. Mr. J. Kline, of Waumandee, happened to be in town at the time of the fire, and took hold like a good fellow, and during the time lost his coat. He stood in the intense heat, and through his help with others, saved the hardware store of *R. L. Dickens.* Through the contributions of Proctor Bros., John Maurer, Emil Maurer, Dr. G. N. Hidershide, John Dressendorfer, Peterson, Massuere & Co., Tim Selk, and J. M. Fertig, a coat was bought and thanks returned to John for his help.

[Signed]                    "W. P. MASSUERE."

The answer consists, in effect, of denials, admissions, and matters in mitigation of damages. On the trial the jury returned a verdict in favor of the plaintiff for $1,000. Thereupon the defendant moved upon the minutes of the court to set aside the verdict, and for a new trial. On the plaintiff's filing a remission of $500 from the verdict, the court overruled said motion. Thereupon judgment was entered in favor of the plaintiff for damages, costs, and disbursements, amounting in all to $567.29, from which the defendant appeals.

For the appellant the cause was submitted on the brief of *S. Richmond,* attorney, and *H. M. Lewis,* of counsel. They contended, *inter alia,* that taking the whole article together it was not libelous. The scope and object of the publication must be considered, and such a construction put upon the language as would naturally be given to it. The sense is to be gathered from the whole of the writing, and neither the court nor jury should consider isolated words or sentences. Explanatory circumstances known to all parties are to be taken into account as part of the words. 2 Starkie, 85; *Carter v. Andrews,* 16 Pick. 1; *Dorland v. Patterson,* 23 Wend. 422; *More v. Bennett,* 48 N. Y. 472; *Hayes v. Ball,* 72 id. 418; *Filber v. Dautermann,* 28 Wis. 134; Odgers, Libel, 27, 552; *Chalmers v. Payne,* 5 Tyrw. 766; *Hunt v. Algar,* 6 Carr. & P. 245; *Weil v. Schmidt,* 28

Wis. 137. The scope of the charge was confined to the conduct of the plaintiff in writing the card of which the defendant complained. His likeness to a skunk was illustrated by his writing such a card containing a covert and sneaking insinuation against a business competitor. If the facts disclosed did not justify the use of the comparison, then the words became those of mere incivility and abuse, and were not libelous. Odgers, Libel, 18, 109; Folk. Starkie, 17; *Rice v. Simmons*, 2 Harr. (Del.), 417, 429; *Davis v. Farrington*, Walker (Miss.), 304. Publishing of another, who had been guilty of selling spirituous liquors in violation of law, that he was a convicted felon, was held not libelous if understood by the public to mean only an offense against the excise law. *Perry v. Man*, 1 R. I. 263; *Hawkins v. N. O. P. & P. Co.* 29 La. Ann. 134; *Sibley v. Tomlins*, 4 Tyrw. 90; Townshend, S. & L. 176; Odgers, Libel, 21; Folk. Starkie, 165; *Davis v. Griffith*, 4 Gill & J. 342; *Child v. Homer*, 13 Pick. 503.

*E. Q. Nye*, for the respondent.

CASSODAY, J. 1. This action is for damages by reason of publishing the plaintiff as a "*skunk*," with accompanying epithets. We think the article published by the defendant must be regarded as libelous *per se*, within the repeated decisions of this court, even when construed in connection with the card mentioned in it. It is unnecessary to restate the rule as to what constitutes such libel.

2. There was no error in excluding the conversation of the plaintiff with the witness Hensel, when he asked him to subscribe for the fund to buy the coat mentioned in the two publications. It is said to have been offered for the purpose of showing the spirit in which the plaintiff inaugurated the attack upon the defendant, which appeared in the card. The plaintiff's publication of the card, however, cannot, as we think, be regarded as a justification of the

libel. It was, however, proper to be regarded in mitigation of damages, as it tended to provoke a reply. But what the plaintiff said to Hensel could have no such tendency, for it does not appear that, at the time of publishing the libel, the defendant knew or had any information of such conversation; and neither publication refers to it. Certainly the card cannot be regarded as libelous *per se.* The question here is not whether the plaintiff was moved to publish the card by actual malice, but how far it should go in mitigation of damages.

3. The defendant was allowed to prove the plaintiff's "reputation as to his business practices," in order to meet what was said about "business practices" in the libel. But error is assigned because the court did not also allow the defendant to prove by the same witness what the plaintiff's reputation was "for meddling, making insinuations in regard to competitors in business." But there is nothing in either publication to make it the duty of the court to allow such additional proof. Besides, the defendant was allowed to make substantially such proof by two other witnesses.

4. Error is assigned because the court said to the jury: "Now to say of a man in writing and to publish it in a newspaper that he is a skunk, *if it is intended, as it ordinarily would be* when such words are used, to render him ridiculous or odious in the eyes of the people who read the article, is libel." The court here merely states that such publication as is therein mentioned when standing alone, if made with such intent, would be libelous, with the addition that it would ordinarily be so intended. Such addition is the only ground of criticism, but it was not said of the publication in question,— certainly not of it as a whole,— nor even of what was therein mentioned, if published with a different intention as the jury were at liberty to find.

5. Exception is taken because the court told the jury that "to publish in a newspaper of any one that he is guilty of

low business practices, *meaning to have it understood* that in his business he is unfair and disreputable or dishonest, is libelous. *So if you believe* that by the publication of this article the *defendant intended* to represent the plaintiff as being disreputable, dishonest, and low in business transactions and in the transaction of his business, *or* by calling him a skunk that he meant to make him ridiculous and offensive in the eyes of the people who should read the article, then it is a libel." What has just been said as to the other extract from the charge, seems to be equally applicable to both of these. It is said that the language thus used by the court is, by way of intimation, a departure from the language of the article. But, like the other quotation from the charge, they were each put hypothetically, or by way of illustration, with the qualification " meaning to have it understood," believing " the defendant intended," etc. In view of the fact that the article was libelous upon its face, and other portions of the charge submitting to the jury the question of mitigating circumstances, we do not feel authorized to conclude that the jury were liable to be misled by these portions of the charge.

6. On the subject of damages, the court, among other things, charged the jury: "If there was an adequate and sufficient provocation for it in the publication of the article, calculating to produce a prejudice against the defendant among his neighbors, it would go to mitigate the damages; so this publication of *Mr. Massuere's* is competent and proper to be considered in relation to this question whether the plaintiff is entitled to punitive damages. You want to examine that question, and see whether there is anything in that article which ought to provoke a reasonable man to call his neighbor, even if he did not like him, such names as these. Evidently the article which *Massuere* published was in bad taste on the face of it. It looks like a piece of egotism, advertising his generosity in making a present to

the man who had done well at the fire, *and I think it is difficult to see much more of it.* It does not say that *Mr. Dickens* was not there and that he did not give the man a present or anything of that kind. But on the face of it, it looks like *a mere* piece of egotism and in bad taste on the part of the plaintiff; nor was there anything about all these circumstances that appear in evidence that would justify a reasonable, careful man to publish an article in which he used opprobrious names, in calling his neighbor a skunk and *disreputable in his business practices.* If there was, that circumstance should be considered by you as going in mitigation of punitive damages, and not of real or substantial damages, which the law mentions."

Exception is taken to all of this portion of the charge except the first and last sentences. It is said the court did not instruct the jury to consider the article as a whole, but dwelt upon "isolated words, sentences, or portions." But a large part of the article was confessedly harmless, and was treated by the court as "a very good reply" to what had been published by the plaintiff. It was the "calling names," and the characterizing the plaintiff in the defendant's article that the court was dealing with. Besides, the defendant made no request for the court to charge the jury to consider the article as a whole, for the presumable reason that it was at the time regarded as satisfactory. We do not think the court here misled the jury in assuming that the defendant called the plaintiff a "skunk" or "disreputable in his business practices." It is true that at first he merely denounced the plaintiff "as only fit to be classed with that repulsive order of creation the *Mephitis Americana.*" But this is immediately followed by a reference to the plaintiff's "ignorance" being such as to render him "unable to comprehend the appellation *applied to you,*" therefore, he said: "I will translate for your benefit: SKUNK,— a thing *as repulsive* to the finer sensibilities of

man as your *low* insinuations *and business practices are to your fellow-townsmen.*" To say that a man is " repulsive " and " low " in his " business practices " is, in effect, to say he is " disreputable " in such practices. At all events, the departure is not such as to call for a reversal in a case where the article is libelous *per se;* and hence the only question is one of damages, which was fairly submitted.

7. It is true, the court rather belittled the significance of the plaintiff's card, in giving the opinion that it was not " much more " than " a piece of egotism " or " a mere piece of egotism." This feature of the charge has generated more doubt in the minds of some of us than any other, but, after all, the question of fact upon which such opinion was given was squarely submitted to the jury for their determination. Many courts hold that such expression of opinion on a mere question of fact, which is finally submitted to the jury for determination, is not error. *Vicksburg & M. R. Co. v. Putnam,* 118 U. S. 553; *Porter v. Seiler,* 23 Pa. St. 424, 62 Am. Dec. 341; *Kirkwood v. Gordon,* 7 Rich. Law, 474, 62 Am. Dec. 418; and the cases cited in these references. But here the fact upon which such opinion was given related wholly to the mitigation of the punitive damages; and it appears from the record that, under the direction of the court, one half of the verdict returned by the jury was remitted by the plaintiff. This remission seems to have been sufficiently large to remove all grievance of the defendant by reason of such expression of opinion, even if it was error. Certainly we cannot say that the damages are now excessive.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 35 N. W. Rep. 349.— REP.