THOMPSON *v.* NOBLE.

1. VENDOR AND VENDEE—LIABILITY FOR TAXES.
   Under a contract for the sale of an undivided half interest in wild lands, containing no provision as to possession or the payment of taxes, it is the duty of the vendee, as between himself and the vendor, to pay one-half of the taxes thereafter assessed, especially where the lands are lumbered for their joint benefit.

2. SAME—FAILURE OF TITLE—DEDUCTION FROM PURCHASE PRICE.
   Under a contract to sell "all the lands held and owned" by the vendor in a certain county, and to give a warranty deed therefor, the vendee is not entitled to a deduction from the purchase price for land the title to which is imperfect, but which is not incumbered by a valid lien.

Appeal from Huron; Beach, J. Submitted June 7, 1895. Decided December 30, 1895.

Bill by Charles E. Thompson, assignee of William H. Cooper and William Creevy, and others, against Orange Noble and the Keystone National Bank, for an accounting and the specific performance of a land contract. Complainant Thompson appeals. Decree affirmed.

*Dickinson, Thurber & Stevenson* (*H. W. Stevens,* of counsel), for appellant.

*Horace G. Snover* (*Elbridge F. Bacon,* of counsel), for defendants.

HOOKER, J.   This case is a companion to that of *Thompson* v. *Noble*, *ante*, 19, to which we refer for a partial statement of the facts.   Allusion was made in that case to a contract whereby Noble agreed to sell to Cooper and Creevy an undivided half interest in certain lands.   It is this agreement, and the lands covered thereby, that are involved in this case.   This contract was in writing, and by its terms Noble promised " to sell, on payment of the purchase price, money, and interest, and performance of the articles in all things, and to convey an undivided one-half part of all the lands held and owned by him in the county of Huron, and State of Michigan, except," etc., to Cooper and Creevy.   On their part, Cooper and Creevy promised to pay to Noble $11,000 in five years from September 1, 1873, with interest from September 1, 1874, at 7 per cent., payable annually, after the last-mentioned date.   It was agreed that Cooper and Creevy should have the right to use all of the wood and timber necessary for the erection and carrying on of the salt works and the improvement of the same.   The parties sold some of the land, and subsequently engaged in the business of lumbering upon the lands remaining.   Cooper and Creevy finally made an assignment for the benefit of creditors, and the assignee filed the bill in this cause.   Subsequently the bill was amended, and Cooper and Creevy came in as co-complainants with Thompson, the assignee.

The bill alleges the contract, and describes a large quantity of land alleged to have been held and owned by Noble at the date of the contract, and states that, after the contract was made, it was arranged that Cooper and Creevy should assume the care, labor, and responsibility of looking after the lands, the payment of taxes thereon, and the finding of purchasers for the same, and that, upon the sale of any land, Noble should apply one-half of the proceeds received by him upon the purchase price of the interest of Cooper and Creevy.   It alleges, further, that Cooper and Creevy sold considerable land upon contracts, and Noble received upwards of $6,000, to be applied upon

their indebtedness; and that about April 1, 1888, Noble refused to recognize the right of Cooper and Creevy in the lands and outstanding contracts, or to come to an accounting in relation thereto, and executed a mortgage upon the lands for $30,000 for the purpose of embarrassing complainants. The bill nowhere contains a tender of payment, but prays a decree determining the amount due Noble, and that he convey upon payment or tender of such amount.

The circuit court made a decree in conformity to the theory that Cooper and Creevy had an interest in the land. A balance was struck, leaving them in debt to Noble $26,191.68 over and above all set-offs, and it was further determined that in the lands remaining, and the amounts unpaid upon existing land contracts, Cooper and Creevy had a half interest, subject to said balance of $26,191.68, and subject to expenditures incurred by Noble for taxes, etc., during the pendency of the suit. It was therefore adjudged that there was due on July 31, 1891, to Noble, from Cooper and Creevy, $26,191.68, and the assignee, Thompson, was authorized to sell the interest of Cooper and Creevy at public auction, subject to the payment of the amount due to said Noble, at the time and place named, etc.; and it was further decreed that, within six months after confirmation of the sale, the purchaser or purchasers pay said sum of $26,191.68, with interest at 7 per cent., to Noble and the Keystone Bank, and that upon such payment the bank should execute and deliver to said purchaser or purchasers a release of the undivided one-half of the lands, and Noble should execute and deliver a warranty deed of the undivided half of the lands unsold, and a quitclaim deed of the undivided one-half of certain other lands, the title to which was in dispute. In case of a failure of the purchaser to pay the amount due to Noble within six months, he was to be forever barred from any claim to said premises. From this decree the complainant Thompson appeals. The defendants have not appealed, so far as we can discover from the record, and we

must therefore assume that they are satisfied with the decree. The objections made to the decree appear to be (1) that one-half of the taxes upon the premises were erroneously charged to the complainants in the accounting; (2) that a deduction should have been made from the contract price for a failure of title to some of the lands.

It is contended that Noble should pay all taxes upon these lands, inasmuch as no mention of the subject was made in the contract. Counsel cite no authorities in support of the proposition that, when the contract is silent as to the possession and the payment of taxes, the vendor must pay them, because he owns the legal title. Counsel for the defendants call attention to several cases holding that, where the vendee takes possession under a contract of purchase, he is liable for taxes subsequently levied. Cooley, Tax'n, 467; *Farber* v. *Purdy*, 69 Mo. 601; *Miller* v. *Corey*, 15 Iowa, 166; *Watson* v. *Sawyers*, 54 Miss. 64; *Bradford* v. *Bank*, 13 How. 57. If the law justifies the claim that taxes should be paid by the party in possession where the contract is silent, such claim ought not to prevail here, for the lands were wild; and, moreover, as stated, Cooper and Creevy lumbered them, and therefore received equal benefit from them with the defendant Noble. We agree with the circuit judge that one-half of the taxes was a legitimate charge in favor of the defendants.

It will be remembered that Noble agreed to sell "all lands held and owned by him." It is asserted that this included some parcels the title to which was in dispute, and therefore defective. The contract was agreed upon at Erie, Pa., by Noble and Creevy. Both testified upon this subject. Creevy said that Noble represented that he had 7,800 acres; that some were defective, and he would have Holbrook fix up the title; that of this 7,800 acres a large quantity proved defective. Noble claimed that he told Creevy that there were some lands that belonged to other parties, and some the titles to which were disputed.

He testified that he "never laid any great stress upon them," and that he thinks Holbrook perfected titles to some of the land. In addition to this, Creevy says he found the title defective to these lands, and produced a list, which was offered in evidence, but to which our attention is not directed. It seems to be conceded, however, that there were some lands to which Noble did not have a perfect title, if, indeed, he had even color of title; but we see no way of determining the question, for want of evidence upon the subject. The circuit judge found that Noble's title to these lands (and they are described in the decree) "was in dispute, and imperfect, and that said lands were not included in the contract, to the extent that said Noble would be required by said contract to convey a perfect title to said lands." As already seen, the decree required that they be quitclaimed upon payment of the contract price. We are of the opinion that these lands were subject to the agreement to convey by warranty deed, if they were properly included in the contract sued upon. Whether they were or not would depend upon whether Noble owned them. If they did not belong to him, they could hardly be said to have been "held and owned" by him. Devl. Deeds, 1015; *Jamaica Pond Aqueduct Corp.* v. *Chandler*, 9 Allen, 159. If they were owned by him, the complainants would have no cause to complain, unless they were in some way incumbered by mortgage or other valid lien, which does not appear. Counsel's brief states that, as to some of the lands, "the Donohue title had been cut off [by legal proceedings] about the time that Noble purchased" (presumably from Donohue or his grantees), and that (apparently before the time that the contract was made) "Noble had allowed 500 acres of what are termed 'school lands' to revert to the State." As all were wild lands, there is little room to contend from this statement that Noble "held" or "owned" either. There is evidence that indicates an understanding about some such lands, and negotiations regarding them later; Cooper and Creevy

having perfected some titles, and deeded one-third to Noble, whereupon Noble expressed satisfaction, and wanted them to see what could be done with the remainder. It is probable that this may be the basis of the decree requiring a quitclaim of such lands.

Having reached the conclusion that the taxes were a proper charge, and that we find no evidence upon which to predicate a deduction for failure of title, we have no alternative but to affirm the decree of the circuit court.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.