Smith vs. Utley and others.

SMITH, Appellant, vs. UTLEY and others, Respondents.

*December 21, 1895 — January 7, 1896.*

*Newspaper libel on chief of police: Liability of managing editor.*

1. A newspaper article calling policemen "hogs" and "blood sucking police officers who insist on sitting on juries," declaring that they neglect their duties as policemen and cheat honorable citizens out of jury fees, and adding that this has no reference to the chief of police because he is beneath notice, is *held* an actionable libel upon said chief of police.

2. The managing editor of a newspaper is equally liable with the proprietor and publisher for the publication of a libelous article, whether he knew of the publication or not.

APPEAL from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Reversed.*

This is an action to recover damages for the publication of several articles each claimed to be libelous. Such articles were published in the Racine Evening Times, a newspaper of general circulation, owned by the Times Publishing Company, a corporation. The action was dismissed as to defendants *Olympia Brown* and *Lephia Brown*, to which no exception was taken. There were four causes of action set forth in the complaint, and a demurrer *ore tenus* was interposed to each, which was overruled as to the first three, and sustained as to the last. Exception was taken to the ruling of the court sustaining the demurrer to the fourth cause of action. At the close of the evidence, on motion, the court directed a verdict for the defendant *Utley*, to which exception was taken by plaintiff. Judgment was rendered on the verdict, from which this appeal was taken.

*Wallace Ingalls*, attorney, and *John B. Simmons*, of counsel, for the appellant.

*Thomas M. Kearney*, for the respondents.

MARSHALL, J.   The first question presented on this appeal is whether the demurrer *ore tenus* to the fourth cause of action in the complaint was properly sustained.   In determining this question, we must look to the whole article, consider its whole scope and object in the light of existing circumstances properly pleaded, and then put such construction upon the language as would naturally be given to it. *Bradley v. Cramer*, 59 Wis. 309.   In the complaint, after setting forth that plaintiff was the chief of police of the city of Racine, and that defendant was one of the owners, proprietors, and editors of the Racine Evening Times, it is alleged that he maliciously caused to be published and circulated of and concerning the plaintiff, and with malicious intent to injure him in his office and cause it to be believed that he was unworthy of trust and confidence in such office, an article as follows:

"CHOKE THEM OFF.

"(Intending thereby to refer to this plaintiff.)

"BLOOD-SUCKING POLICE OFFICERS WHO INSIST ON SITTING ON JURIES.

"SALARIES AS OFFICERS SUFFICIENT.

"THEY NEGLECT THEIR DUTIES AS POLICEMEN AND CHEAT SOME HONORABLE CITIZEN OUT OF A $1.20 FEE.   (Meaning and intending thereby to charge this plaintiff with the dishonorable neglect of duty therein stated, or of being the cause of such criminal misconduct.)

"Speaking about hogs, they can be found on the Racine police force (meaning the police force of which this plaintiff was a member).   The great American hog is not in with some of them.   Now, this has no reference to *Georgie*, the chief of police (meaning plaintiff).   He (meaning plaintiff)

is beneath our notice until after the coming spring appoint-ments (meaning and intending thereby to refer to this plaintiff as less entitled to notice and more insignificant than any other members of such force, not deserving as much recognition as a hog). Should he (meaning said plaintiff) be retained as the great 'I am' for another year, he (meaning said plaintiff) might probably receive a little more notoriety."

It was obviously proper for plaintiff, by innuendoes, to define the application of the article to the facts set forth in the pleadings; not to extend the meaning of the words, but to show their meaning, how they came to have the defamatory meaning which plaintiff claims for them, and how they applied to plaintiff. Such is the legitimate office of the innuendo. *Cramer v. Noonan,* 4 Wis. 231; *Bradley v. Cramer,* 59 Wis. 309; *Weil v. Schmidt,* 28 Wis. 137; *Fleischmann v. Bennett,* 87 N. Y. 231; *More v. Bennett,* 48 N. Y. 475. We are unable to see how the well-established rules of pleading in such cases were seriously violated, if at all. The fair meaning of the words of the article, viewed in the plain, popular sense in which the same would be naturally understood in view of the matters properly pleaded, is that some of the police force, at least, were nothing more than bloodsucking police officers, who insisted on getting all the money they could, regardless of their duties as such officers, by spending their time serving on juries, and that they deserved to be discharged; that they were in the habit of neglecting their official duties for the purpose of earning additional compensation by serving on juries; that they were hogs, not satisfied with the compensation of their official positions, but seeking to gain additional compensation, to the neglect of their official duties; and that, though plaintiff was not included in the particular arraignment, he was more insignificant and less fit for his official position than those that were.

Such language, under the circumstances, necessarily tended to prejudice and degrade plaintiff in his office as chief of police of the city of Racine; to cause it to be believed that he was not worthy to hold such position, by reason of habitual neglect of duty, — hence actionable. *Singer v. Bender*, 64 Wis. 169; *Bradley v. Cramer*, 59 Wis. 309; *Massuere v. Dickens*, 70 Wis. 83; *Lansing v. Carpenter*, 9 Wis. 540; *Wilson v. Noonan*, 23 Wis. 105. It follows from the foregoing that the demurrer was improperly sustained.

The second question presented is, Does the evidence sufficiently connect the defendant *Utley* with the publication to render him liable in damages, or to make it the duty of the court to submit the question to the jury? The owner of the paper was a corporation. Defendant *Utley* was its president and active manager. He was the principal editor. To be sure, he testified that he did not authorize or know of the publication. He said: "I do most of the editorial work. I do everything. I am the political editor; the principal editor. I believe my name appears on the paper as editor." There is other evidence tending to show that, in addition to being the chief executive officer of the corporation, he was the managing editor of the paper and actively engaged in his duties at the time the libelous article was published. If such are the facts, he does not stand in the position of a person who is sought to be charged merely because of being a stockholder or officer of the corporation, or come within the cases where it is held that mere proof of ownership of stock or official position is not sufficient to show active agency in the production and publication of the libel, so as to render such owner or officer individually responsible, as in *Mecabe v. Jones*, 10 Daly, 222; *Belo v. Fuller*, 84 Tex. 450; *Simonsen v. Herold Co.* 61 Wis. 626; but comes within the exception mentioned in *Belo v. Fuller*, *supra*, as follows: "That persons are stockholders and officers of the publishing corporation will not make them re-

sponsible for libelous publications appearing in the paper, unless it is shown that they in some way aided and assisted and advised its publication or circulation, *or unless their duties as officers of the concern were of such character as charges them with the performance of functions concerning the publication and circulation of the paper, such duties being of such nature that the law would imply that such officer knew or should have known of the publication of the libelous matter.*"

It is laid down by all the text writers that the proprietor, publisher, editor, author, and printer are severally and jointly liable. 13 Am. & Eng. Ency. of Law, 372; Fraser, Libel, 7–9, and notes; Odgers, Libel & S. (Bigelow's ed.), *453; Newell, Defamation, S. & L. 239; Townshend, Slander & L. § 115, note 1. This liability attaches to the editor upon the theory that the matter is constructively under his supervision, and neither the editor nor proprietor is allowed to plead in defense that he was ignorant of the publication. Merrill, Newspaper Libel, 53. While evidence that the defendant did not actually or constructively participate in the publication may be introduced, neither the editor, publisher, nor proprietor can defend on the ground merely that he did not know about the libel until after it was published. Merrill, Newspaper Libel, 249. Publisher and managing editor are treated alike by the standard text writers. This appears to be so elementary that the question has rarely, in recent years, been presented to the courts for consideration. In *Watts v. Fraser,* a case decided in 1835 in the court of King's Bench, and reported in 7 Adol. & E. 223, both the editor and printer were held liable, though, as said in Fraser, Libel, 10, they had no knowledge whatever of the publication. It is said in Townshend, Slander & L. (4th ed.), § 252, that the publisher is liable on proof of publication, but when the editor is sued he can be held liable only on proof that he personally aided or procured the publication of the article.

This is in conflict with the note at section 115 and the case cited to support the text. *Reg. v. Ramsay*, 15 Cox, Cr. Cas. 231, was decided under a statute which changed the rule in criminal cases. It was there held that by Campbell's libel act (6 & 7 Vict. c. 96, § 7) the law as it had theretofore existed, that the editor was liable both civilly and criminally for what appeared in the paper, though published without his knowledge, had been so changed as to render want of knowledge or consent a defense in trials on indictment. This case was decided in 1883, and shows that in civil actions in England the law remains as formerly; the managing editor is liable without proof of knowledge of or consent to the publication of the libel. To the same effect is *Nevin v. Spieckermann* (decided in the supreme court of Pennsylvania in 1886), 4 Atl. Rep. 497, where it is held that the general manager of a newspaper published by a corporation, the one who looks after the editorial work, is liable; also, *Weil v. Nevin*, 1 Pa. Sup. Ct. Cas. 65, where an attempt was made to extend the rule to the assistant editor, and it was held that, "though the general editor may be bound to know of what goes into the paper of which he is the supervisor, not so the assistant editor, for his work is limited."

From the foregoing we reach this conclusion: The law is well settled that the managing editor of a newspaper is equally liable with the proprietor and publisher for the consequences, in a civil action for the publication of a libelous article; and this is so whether he knows of the publication or not, for it is his business to know, and mere want of knowledge constitutes no defense.

To be sure, there is evidence in this case tending to show that the defendant was only editor in a particular department, and had no control over the department in which the articles complained of appeared; but, on the whole case, it is quite clear that the question should have been submitted to the jury under proper instructions to the effect that, if

he was the general or managing editor of the paper, he is responsible for the consequences of the libelous publication, whether he knew of it or not.

We assume, from an examination of the case and the manner it was presented in this court, that the learned trial judge based his ruling, in directing a verdict in defendant's favor, upon the theory that mere want of knowledge on the part of the editor of the libelous publication constitutes a defense. This was error, for which the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.