## Danville Press Co. et al. v. Robert P. Harrison.

1. LIBEL—*Liability of Newspapers Published by Corporations.*— Where a newspaper is published and controlled by a corporation, one who is merely an officer of the corporation is not responsible individually for libelous publications made without his knowledge or consent, but it is otherwise where such officer is the general manager of the paper and authorized by the directors of the corporation to control its policy.

2. SAME—*Evidence of Provocation, When Inadmissible.*—The fact that the person libeled had previously published in a newspaper controlled by him an article reflecting upon the author of the libel in question and which provoked its publication is no defense to an action for its publication.

3. DAMAGES—*Where $800 is Not Excessive.*—In an action for publishing in the columns of a newspaper having a large circulation in a populous community, an article concerning the plaintiff, highly libelous and wholly unjustifiable in language and sentiments, and in many respects unfit for publication, a verdict for $800 is not excessive.

4. SAME—*Punitive Damages—When Proper in Actions for Libel.*— Where the general manager of a corporation engaged in the publication of a newspaper neglects to control his employes in respect to what shall appear in the paper and a libel is published, such neglect is equivalent to a reckless disregard of the rights of others, equal to a willful or intentional wrong, and renders both the manager and the corporation liable to be mulcted in exemplary damages. .

5. SAME—*Where the Court Will Not Presume that Punitive Damages Were Allowed.*—Where the damages awarded in an action for publishing a libel are not excessive the court will not presume the jury allowed anything for exemplary damages.

Trespass on the Case, for the publication of a libel. Appeal from the Circuit Court of Vermilion County; the Hon. HENRY VAN SELLER, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed September 11, 1901. Rehearing denied November 20, 1901.

### COPY OF THE LIBEL SUED UPON.

" Trouble Has Begun—Editor Crayton Fires a Lyddite Bomb into Bluff Rider's Camp—Pays Respects to Harrison—He Reproaches Mr. Jewell and Gives Capt. Yeager His Dues in His Own Inimitable Manner.

The following is taken from this week's edition of the Potomac Republican and it amply verifies the prediction of The Press of a few days ago, that the Commercial had started something fierce when it jumped onto the young editor of the Artesian City for roasting the Bluff Riders. In several places The Press has taken the liberty of drawing a pencil through a few lines as a mark of courtesy and commiseration for the Commercial editor.   The Press is very sorry to see two good republican brothers tearing at each other's throats in such a fashion but it seems to be a republican fashion much in vogue of late and about all we can do is to stand at a safe distance and yell ' Go it bear, go it wife,' like the veteran backwoodsman whose better half had an adventure with bruin, trusting to the best man to win out in the struggle.   Here is Brother Crayton's hot stuff from Potomac :

### ' FROM EDITOR CRAYTON.

Tuesday's Commercial contained a scurrilous personal attack upon the editor of the Republican, written by a sickly young buzzard, who is the journalistic joke of Danville; who wants to be a politician when nature made him a fool, and aspires to be a dictator when God created him a jackass.

His name is Robert Harrison.

He says we asked Capt. Yeager to take us back into the battery; he says we are fighting republican institutions; he says we " marched with Coxey."

Before we begin talking to this sore-eyed paralytic, of whom John Beard offers to bet that a scientific test will show that he hasn't two ideas above a baboon, we want to inform the half-dozen people here who read the Commercial what he is talking about.

Last week we wrote a private letter to Superintendent R. B. Holmes to which was added a postscript that read thus :

" P. S.—I see that the battery is going to China.   Tell Yeager that if he will let me go along I'll take back everything I said about him."

Now how this chalk-faced young specimen of lost manhood got it we can't say.   We do not believe that Mr.

VOL. 99.]                Danville Press Co. v. Harrison.

Holmes would give up a private letter for publication. Neither do we care. As our readers can plainly see it was written in jest. Why, Battery A stands about as much show of going to China as Bob Harrison does of having an honest principle.

Another word as to his "idea of Capt. Yeager." We do not like Capt. Yeager and he does not like us, so it is an even split. Capt. Yeager is a man of ability. As a drillmaster and disciplinarian he had few equals among the volunteer officers. We want to give the devil his dues. That's "Cap." And the bare mention that an animated Egyptian mummy like Harrison could have any sort of a notion is laughable. That is how we tried to buy our way into the battery. The idea! Why don't some one kill the idiotic skunk? Why, if we wanted to go to war there are plenty of chances. We might join the "Rough Riders."

Mr. Harrison says we "marched with Coxey." Mr. Harrison, is simply a liar. We never saw Coxey or his army in our life. That is but a pleasant tale we told for twenty-two caliber intellects like Harrison to believe.

He says we are fighting republicanism. This will also be laughable to the readers of the Republican who know us. We do not like the "Rough Rider" idea and we said so. But we did not accuse Harrison of secreting it. Why, if an idea was to get into that monkey head of his it would kill him.

Mr. Harrison used to like us. We can rake up old files of the Commercial where Mr. Harrison said nice things about us and reprinted pieces from the Republican. Why this sudden change? It takes but a few words to tell. Last spring we assisted a number of other republicans in throwing Mr. Harrison's father-in-law so high that he caught a glimpse of the pearly gates. Mr. Harrison feeds at the family crib. So it hurts Mr. Harrison.

The argument that he uses shows that he is hurt. We hate that, but we are not going to run this great journal of reform to suit him. We can give Mr. Harrison all the journalistic row he wants. We can also whip him, if that is what he wants.

So you see we are occupying the easy chair.

It will be seen that Mr. Harrison does not rely upon anything but "mud slinging" to gain his point, and it can also be seen that the article is purely personal. He has been up here for several days and probably went home with instructions to flay us. Before the mangy cur gets through

with it he will discover that where we come from they flay one another.

We would not advise the "Rough Riders" to delegate to Mr. Harrison the task of defending them. He is a poor, little, cowardly, white-livered sneak with about as much honor as a striped hyena.

A Rough Rider! Him a Rough Rider! Wearing the uniform of a soldier! Why, we could take a willow switch and run him until he fell from exhaustion. That poor, measly, idiotic parietic has not kidney enough to look into the cannon down at the Armory.

Him go to war! Why, they would hitch him up in the wagon train!

There is only one place he could possibly fill. After all armies follow a swarm of human vultures that creep upon the field of battle when the fight is over and under the cover of the black of night rob the dead and murder the wounded for loot. Vampire Harrison! That's what he would be. Soldiers shoot such scavengers on sight.

Harrison, the political leader, a member of the "brother-in-law combination." Why, he hasn't brains enough to grease the fly-wheel of a lady's watch, nor principle enough to keep him out of jail if he had sense enough to be wicked. To think that that half-baked cuss could have any influence over anybody with as much character as a yellow dog! If the judges were to enforce the "non compos mentis" clause he wouldn't be allowed to vote.

For heaven's sake, Mr. Jewell, what do you mean by letting such pulp-headed infants mix up in political affairs? Do you want a mortgage on the rest of the Commercial's stuff? This political role is a new thing. We were informed that he had been trying to break into Danville society for the past five years, but he never got closer than the outside door. He may come up into the country and make his relatives believe he is a great man, but he don't fool the rest of the farmers. They know an idiot by the shape of his forehead.

Who is Robert Harrison?

He is a freak from the Indiana woods that tried to report on a Chicago "fly-by-night" sheet and failed. He then mortgaged his mother's farm and bought a newspaper, and then had to mortgage the newspaper to keep alive. That's the business ability of the man that wants to be manager of the republican party.

If it wasn't for his cousin the Commercial wouldn't last

until sundown. They tell us that John Harrison is a gentleman.

Oh, we have forgotten. He is an orator. All the farmers remember the county convention and when the "unit" amendment was in danger of being lost. Jewell was stroking his wise old head. He was puzzled what to do next. Bill Cannon was for a moment in a quandary. Not so with Bob. He was "next." He rushed upon the floor with the air of a Demosthenes and said six words loud enough to be heard ten feet away. Then he grew pale and turning his back to the audience collapsed.

Another great speech that had been set up late at night' had died "a bornin'."

He is a coward, because A. R. Hill, whom everybody whips, made him run like a turkey.

An indecent personal attack like that would never emanate from any one with the first instincts of a man. And he isn't one. Look at the pale, bleached out little insect, look at his starved carcass, his long, flapping, mulish ears, his big, expressionless, owlish eyes, and that sickly simper on his face that makes a man want to offer it something to eat. If it isn't an animal, what is it?

We may in our young and bucky days have been wicked. We have not denied it. We are never afraid that the angels will swoop down and bear us away on the account of our purity but there is one thing that we never have been. We have woke up in the middle of the night when the stars were twinkling in the swart heavens and thanked God that we was not born a fool.

We have never stolen anything. We wouldn't say that for Harrison. We are morally certain that he stole that sickly grin from the striped hyena and his personal beauty from the kangaroo.'"

KIMBROUGH & MEEKS and WINTER & REARICK, attorneys for appellants.

GEORGE T. BUCKINGHAM and O. M. JONES, attorneys for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This was a suit by appellee against appellants for damages for the publication of an alleged libelous article in a newspaper called The Danville Daily Press, of which the

appellant John Beard was the general manager. The trial by jury ended in a verdict and judgment for $800, to reverse which this appeal is brought, and it is argued, to effect such reversal, that the court admitted improper evidence, rejected competent evidence, gave wrong instructions and refused proper instructions.

The article published of and concerning appellee, we think was highly libelous and wholly unjustifiable. Its language and sentiments in many respects unfitted it for public prints and we feel compelled, for the same reason, to refrain from reciting it in this opinion. It is enough to say that all the venom that can be engendered by envy and malice appears in every line of it. It contains no clever phrase, but it is the shriek of a vulgar mind dominated by the demon of hate. The article was written by Crayton, the publisher of another paper, and sent to the editor of appellants' paper and published in its columns. Appellants offered to prove upon the trial that appellee had published an article in the Commercial, a newspaper of which he was the publisher, reflecting upon Crayton, and it is argued these reflections provoked the libel that was afterward published. The court rejected such evidence, as we think, properly; for as we have said before, the publication of the libelous article was wholly unjustifiable, and there was nothing in the Commercial's reflections that even mitigated the Press article. The appellant Beard claimed he knew nothing of the libel before its publication and had not authorized it to be published, and therefore he should not be held liable for its publication—and inasmuch as he could not have intentionally or willfully caused its publication he was not liable for punitive damages. The evidence shows, however, that Beard was the general manager of the publication and was authorized by the directors to control the policy of the paper. He had also assumed to do this, and had employed Robinson, the editor who published the libel. We think Beard as much responsible for the publication as if he knew the libel was about to be published and did not prevent it. In other words a person can

not avoid liability by putting instruments of harm, which he is authorized and it is his duty to control, into the hands of others, and then by abandoning the same in the hands of his agent, be heard to say that the agent acted without his knowledge or consent, after the harm has been accomplished. The instructions of the court on this line applied the correct principles and were therefore right.

We find no prejudicial errors in the ruling of the court upon the evidence in the case nor upon the instructions to the jury, and all that was proper in the refused instructions was contained in those given by the court. In truth the instructions contained as a whole as fair and impartial an exposition of the law as the rights of appellants' case demanded.

The damages were not excessive, and it may be well conceived the jury awarded only actual damages. We are unwilling to say that such a libel, published in the way this one was published—in the columns of a newspaper having a large circulation, in a populous community, does not actually damage the victim of its venom the whole amount of the verdict that was returned. It is inconceivable to persons of correct thought and sentiment, having a proper regard for the characters and feelings of others in civilized society, how the amount of damages in this suit could afford adequate compensation for the contumely and humiliation of such a libel.

We can not presume the jury gave punitive damages, and even if they did, it was proper against both defendants— at least within the right of the jury to do so, in their sound discretion. If the appellant Beard had no actual knowledge of the libel—and from the evidence he probably did not—still if he neglected to control his agent in this respect, and that he did, that was equivalent to a reckless disregard of the rights of others which was equal to a willful or intentional wrong.

The judgment will be affirmed.