## FOLWELL v. MILLER et al.

### (Circuit Court of Appeals, Second Circuit. April 2, 1906.)

### No. 109.

1. CORPORATIONS—LIABILITY OF OFFICERS—PARTICIPATION IN WRONGFUL ACT OF CORPORATION—LIBEL.

Where a libel was published by a newspaper owned by a corporation, the president of such corporation was not individually liable therefor because of his official capacity either as president or stockholder, in the absence of his personal participation in such publication.

2. LIBEL—PUBLICATION BY CORPORATION—LIABILITY OF MANAGING EDITOR.

The editor in chief of a newspaper owned and operated by a corporation of which such editor in chief was president was not civilly liable for the publication of a libel by his subordinate, of which the editor in chief had no knowledge, and which was published during his absence from the office.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, § 178.]

3. SAME—RATIFICATION.

Where the editor in chief of a newspaper was not civilly liable for a libel published by his assistant at the time suit was brought therefor, no liability could be created by his alleged ratification of his assistant's act by pleading as a partial defense, the truth of certain statements in the libel.

In Error to the Circuit Court of the United States for the Southern District of New York.

Wm. L. Snyder, for plaintiff in error.

B. F. Einstein, for defendants in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The trial judge in the court below directed a verdict for the defendant, upon the ground that it appeared by the evidence that the defendant had not participated in the publication of the libel which was the subject of the action. The principal assignment of error challenges the correctness of this ruling.

The facts proved upon the trial were these: The libel was published in the New York Times, a newspaper owned by a corporation in which the defendant was the principal stockholder, and of which he was the president. The defendant was also at the time editor in chief of the newspaper, having general supervision of the editorial and news departments; but the news department was under the immediate charge of a subordinate editor. The libel consisted of a news item, which was received by the news editor during the night of April 5th, and was published in the issue which went to press on the morning of April 6th. The defendant was absent during the period covered by the reception and the publication of the libel from the editorial rooms and the building in which the newspaper was printed, and had no knowledge of the publication until a subsequent day.

That the defendant was not liable merely because he was president of the corporation and a stockholder is a proposition which does not

require extended discussion. The president of the corporation is an agent of very extensive, but not unlimited, powers. He is not personally liable because of his official capacity, any more than are the directors or stockholders, for torts committed by the corporation, in the absence of personal participation in the tortious act. As an agent, he is not liable for the acts of misfeasance or nonfeasance of his subordinate agents or employés. Bath v. Caton, 37 Mich. 199; Paper Co. v. Deah, 123 Mass. 267; Brown v. Lent, 20 Vt. 529; Murray v. Usher, 117 N. Y. 542, 23 N. E. 564; Nat. Cash. Reg. Co. v. Leland, 94 Fed. 502, 37 C. C. A. 372; Arthur v. Griswold, 55 N. Y. 400.

Whether the defendant was liable because of his relation to the newspaper as editor in chief, notwithstanding the libel was published without his knowledge or complicity, is a more debatable question. If that relation is one in which the editor is merely an agent and the proprietor is the principal, and the liability of the editor is to be tested by the ordinary rules of the law of principal and agent, it is plain, as has been already stated, that he would not be liable for any tortious act committed without his privity by another agent of the principal, whether such other agent be one of higher or lower grade. On the other hand, if the liability of the editor is coextensive with that of the proprietor, it is not affected or qualified by the circumstance that the publication was made without any personal participation on his part. It has long been the settled rule that when a libel is published in a newspaper the fact alone is sufficient evidence to charge the proprietor with the guilt of its publication, and he is not permitted to show in exculpation that he was not privy nor assenting to, nor encouraging, the publication. Although it may have been published, contrary to his express orders, by a servant, if this was in the usual course of the servant's employment, the proprietor is liable. Rex v. Gutch, 1 Moody & Malkin, 433; Rex v. Walter, 3 Esp. 21; Bruce v. Reed, 104 Pa. 414, 49 Am. Rep. 586; Andres v. Wells, 7 Johns. 260, 5 Am. Dec. 267. It has never been distinctly decided that the liability of the editor is coextensive with that of the proprietor. Some of the text-writers indulge in general statements which imply that the liability is coextensive, but the authorities which they cite do not justify the implication. The only carefully considered adjudication upon the point which we have been able to find is Smith v. Utley, 92 Wis. 133, 65 N. W. 744, 35 L. R. A. 620. In that case the court declared:

"That the managing editor of a newspaper is equally liable with the proprietor and publisher for the consequences in a civil action for the publication of the libelous article; and this is so whether he knew of the publication or not, for it is his business to know, and mere want of knowledge constitutes no defense."

The opinion cites the statements of the text-writers and the authorities referred to by them, together with some later authorities. Some of these authorities are of trivial importance. One is Watts v. Fraser, 7 Adol. & E. 223, where both editor and printer were held liable for a libelous illustration, although it was published without their knowledge; but the editor was also the proprietor of the magazine in which it was published. Nevin v. Speickermann ((Pa.) 4 Atl. 497, is another

But it did not appear in that case that the defendant was an editor, and the court merely approved an instruction to the jury:

"That his being an officer of the corporation merely would not make him liable for the libelous publication, but if he was engaged in the general management of the paper, he would be liable if the publication was unjustified."

All that Smith v. Utley really decides is that the fact that a libel is published without any authority from, and without the knowledge of, a managing editor will not relieve him from liability when it appears that he was actively engaged in his duties as such editor at the time the libel was published. The reasoning of the opinion, however, is to the effect that publisher and editor stand alike in responsibility for the publication. Another adjudication in which it was incidentally decided that the editor's liability is coextensive with that of the proprietor is Hunt v. Bennett, 19 N. Y. 173, 175. In that case the point was raised that the allegation in the complaint that the defendant was the proprietor of the newspaper in which the libelous article was published, without alleging that he published it, or was concerned in its publication, was insufficient to charge him with the consequences. The court said:

"It is enough to say in answer that it appeared upon the trial, without objection, that the defendant was the editor of the paper, and that the article complained of was written by his assistant. Instead, therefore, of allowing the objection to prevail, even if it was valid, it is our duty to conform the pleadings to the facts proved."

Notwithstanding these adjudications, we are not convinced that the editor's liability is commensurate with that of the proprietor. Of course, he is liable equally with the proprietor when he has personally assisted in any manner in the preparation, revision, or otherwise of the publication of the libel. There is doubtless a presumption of fact that the managing editor has supervised the contents of the newspaper, and performed the duties of his office in that behalf. So doubtless when it appears that he has actually done so, the fact that he has omitted to notice some of the contents will not relieve him from the consequences of his participation. But when it appears affirmatively that he was not on duty during any part of the time between the reception of the libelous matter by the newspaper and the publication, and could not have had any actual part in composing or publishing, we think he cannot be held liable without disregarding the settled rule of law by which no man is bound for the tortious act of another over whom he has not a master's power of control. The action of libel is not based upon neglect of duty, but is for a positive tort; and there is no reason upon which an editor, any more than any other individual, can be held responsible for such a tort when it appears that he was actually innocent of all complicity in it.

It may be true that the moral responsibility of the managing editor of a modern newspaper for the publication of a libel is as great as that of the proprietor. Except upon questions of large policy, the editor in chief is usually supreme in controlling what shall and shall not be published in the newspaper, and ordinarily the proprietor delegates to him

almost untrammeled power in that behalf. Indeed it is safe to say that generally the proprietor is the more innocent of the two for the publication of the libelous matter. The Penal Code of this state recognizes the liability of each as identical, and its provisions are that every editor or proprietor of a book, newspaper, or serial "is chargeable with the publication of any matter contained in such book, newspaper, or serial," and that in a prosecution for libel it is not a defense that the matter complained of was published without his knowledge or fault, and against his wishes by another who had no authority from him to make the publication, unless the "act was disavowed by him as soon as known." Section 246, Pen. Code. But in civil actions legal liability and moral responsibility are not always coincident. The owner of the newspaper is liable for whatever may be published in it, because all those who are engaged in preparing and publishing it are his servants, and the publication is an act within the scope of their employment. It is therefore deemed the act of the owner himself, and, although done without his knowledge, or contrary to his express instructions, he must bear the consequences. The same principle applies to every tort committed by a servant in the course of his employment, whether it is a mere neglect or a tort of a willful and malicious quality. The editor, however, exercises a delegated authority for the owner, and consequently is but an agent of the owner, even though he be the editor in chief. His subordinates are not his agents or servants, because the power to select them and discharge them belongs to the owner, and they are not under his control when that power resides in a higher agent, notwithstanding he is permitted to control them when the owner does not see fit to intervene. It is impossible to differentiate the relation of an editor and proprietor from that of an agent and principal. We conclude that the trial judge correctly ruled that the defendant was not liable for the act of his subordinate under the circumstances of this case.

It is urged for the plaintiff in error that some of the averments of the answer, setting up as a partial defense the truth of certain statements in the libel, amounts to a ratification by the defendant of the act of his assistant editor, and renders the defendant liable as though he had originally directed the publication. It is a sufficient answer to this contention to say that, unless there was a cause of action against the defendant at the time the action was commenced, none which would maintain it could be created by his subsequent conduct.

The court below properly directed a verdict for the defendant, and accordingly the judgment is affirmed.