## WORLD PUB. CO. et al. v. MINAHAN et al.

No. 9049—Opinion Filed May 28, 1918.

(173 Pac. 815.)

### Libel and Slander—Newspaper Publication— Liability of Managing Editor.

Where the managing editor of a newspaper. is one of the officers of the corporation and has active charge and control of the management, conduct, and policy thereof, he is equally liable with the owner for the publication of a libelous article, and this is true

even though he did not know of the publication, for it is his duty to know, and it is his duty to control the contents of said publication, and he cannot avoid responsibility by abandoning the same in the hands of his employes and escape responsibility upon the theory that his employes acted without his knowledge or consent.

(Syllabus by Hooker, C.)

Error from District Court, Tulsa County: Conn Linn, Judge.

Action by Mary Minahan and another against the World Publishing Company and Eugene Lorton. Judgment for plaintiffs, and defendants bring error. Judgment affirmed.

Gregg & Martin, for plaintiffs in error.

John Y. Murray, Jr., and Davidson & Williams, for defendants in error.

Opinion by HOOKER, C. In the petition filed in this cause in the lower court Mary Minahan alleged that at all times mentioned therein she was the proprietress and manager of a rooming house located in the city of Tulsa, and at the same time the World Publishing Company, a corporation, was the owner, and the publisher of two certain newspapers, to wit, the Tulsa Daily World, a morning publication, and the Tulsa Evening Sun, an afternoon publication, both of which papers were in general circulation in the city and county of Tulsa; that Eugene Lorton was the managing editor of both of said papers, and as such, among other things, it was his duty to supervise the matters printed and published in each and all of said papers, and to exercise reasonable diligence in ascertaining the truthfulness of the articles so published, and that his duties to the World Publishing Company required him to ascertain and know the truthfulness of all articles published in said papers: that at all times the said Mary Minahan, plaintiff below, was a good and worthy citizen of the city of Tulsa and that she conducted a clean, law-abiding rooming house, and in all ways behaved and conducted herself as a good woman should; that the rooming house conducted by her enjoyed a good reputation as a moral and law abiding place; and that neither she nor her place had ever had any suspicion cast upon them until after the publication of the articles complained of here.

It is further alleged that said defendants wrongfully, maliciously, and wantonly, and with a desire and intention to injure her, the said Mary Minahan, and her good name, and to bring her into public disgrace among her neighbors and her friends, did on the 11th day of July, 1914, in the various editions of its papers, falsely, wrongfully, and maliciously, and in total disregard of her rights, publish of and concerning her and her place of business the following libelous and defamatory matter:

"Police to Delve into Mysterious Case at Resort.

"Landlady Still Refuses Information—Police Active, Foul Play Is Feared— Is Bad Result.

"The deepest, darkest mystery still surrounds the sudden illness of Mrs. Frank Fleek, who came to Tulsa yesterday afternoon in company with her husband and registered at the Minahan rooms. Death was only cheated of a victim by the municipal pulmotor, operated by Jack Breen of the Central Fire Station, after the woman's lungs had been refreshed by artificial air pumped from the life-saving service.

"From what the woman was afflicted with could not be learned this morning. The Fleeks, who came by automobile from Kansas City and registered at the Minahan rooms without the knowledge of the character of the place it is, are said to be wealthy. Newspaper reporters again this morning were refused admittance to the rooming house while the landlady of the place reluctantly gave up information to the police.

"Detectives Busy.

"The police still cling to the theory that there is something back of the case that has not yet been given out. Detectives and plain clothes officers were this morning detailed on the case. If the landlady continues her obstinate and defiant manner toward the police, arrests may quickly follow.

"A House of Ill Repute.

"The reputation of the house was unknown to the Fleeks when they registered there yesterday afternoon. Police officers this morning gave out the information that it is one of the most notorious houses of ill repute in Tulsa operating under the guise of a 'rooming house.' Although a definite foundation so far is lacking the police are working on the theory that the woman's sudden illness was caused by foul means employed by those in charge of the place.

"Last night when newspaper reporters called at the place, they were met by the landlady, Mrs. Minahan, who abruptly ordered them from the house and threatened bodily injury when they at first refused to comply with her demands. The reporters were forced from the place when several burly men attendants were summoned by Mrs. Minahan.

"Reports from there this morning gir's wearing even less clothing were conspicuous in the resort last night while an effort was being made to resuscitate the woman.

."Reports from there this morning indicate that the woman will recover if she is given the necessary protection."

The petition here stated a cause of action and sought to recover damages in the sum of $10,000 for damages to her reputation.

To this petition the World Publishing Company filed an answer in which it admitted that it was the owner and publisher of the aforesaid newspapers, and that the articles published in them were printed by it in good faith, upon reliable information furnished it through its reporters, and were published by it upon the belief that the same were true, and that the matters and things stated therein were in fact true, and especially denied that said articles, or any part thereof, were and are libelous against the plaintiff, that said articles were published as items of general news in good faith without any malice to the plaintiff or any intention on its part to injure or damage plaintiff in her reputation, credit, or business, and especially denied plaintiff had been injured or damaged in any way by reason of said publications, and said answer also contained a general denial.

The defendant below, Eugene Lorton, filed a separate answer, in which he admitted that he was the managing editor in the employ of the World Publishing Company, and that said corporation printed and published the aforesaid newspaper in the city of Tulsa at the time involved here, and denied the allegations contained in the plaintiff's petition, and especially denied that said articles were printed or published for the purpose of injuring plaintiff in her reputation, and denied that the same had hurt her in any way whatsoever.

The articles published were libelous per se, and the evidence in this case was altogether unwarranted and unjustified, without any foundation to support it.

The evidence for plaintiff below establishes that Eugene Lorton was at the time of this publication the managing editor of the Tulsa Daily World, and the Tulsa Evening Sun. He was also the vice president of the World Publishing Company, and one of the business managers connected with the institution, and had the authority to hire and fire its employes, and the general policy of the papers, together with their entire business affairs, were conducted and operated by him, either personally or by those who were in his employ, and under his supervision.

This case was tried to a jury, and after hearing the entire evidence a verdict was returned in favor of the defendant in error against the World Publishing Company and Eugene Lorton for the sum of $500, and to reverse this judgment the World Publishing Company and Eugene Lorton have appealed to this court, and have assigned several reasons why this judgment should be reversed.

It is urged that in view of the fact that the petition filed herein and on which this cause went to trial sought to recover damages caused only to the reputation of plaintiff below, certain parts of the evidence which defendant in error was permitted to give as to the effect that said publications had upon her health were prejudicial to the rights of the plaintiffs in error. The contention is not well taken. The court in its instructions specifically limited the right of recovery to injuries caused to the reputation of plaintiff below, and during the progress of the trial the statement was many times made to the jury by plaintiff below that she sought no recovery for damages to her health or business, but merely to her reputation. We do not believe that the plaintiff's in error were in any way prejudiced by the introduction of this evidence, and this view is strengthened by the size of the verdict and the entire absence of any justification for the publication.

It is next urged that the admission of the evidence of one Kersey, who was the desk sergeant at the police station upon the night these transactions took place concerning which this publication was made, was error. The purpose of this testimony was to show the conduct and demeanor of the reporters in the employ of the World Publishing Company, whose ill-advised acts caused this publication. The reporters were agents of the World Publishing Company, and while in the employ of the World Publishing Company as a corporation were in a sense under the supervision and management and control of the plaintiff in error, Eugene Lorton, who had charge of the operation of these papers. This testimony was competent, and neither the rights of the company nor of Eugene Lorton were in any way prejudiced by its introduction.

As to the World Publishing Company, there is no merit whatever in its appeal. The judgment here against it is ridiculously small for the injury inflicted, and we unhesitatingly affirm the judgment of the lower court as to it.

It is contended by Eugene Lorton that the

trial court committed an error in refusing to permit him to establish that he was not in the city at the time of the publication of the articles complained of here, but that as a matter of fact he was away on his vacation, and had been for some days prior thereto. and did not know of the publication until after the expiration of several days, and it is further asserted that the trial court committed an error prejudicial to him in giving instruction No. 10, which was as follows, to wit:

"The court instructs the jury that, if they believe from the evidence in this case the defendant Lorton had, either directly or indirectly, under his control a general supervision and management of the editorial policy and news columns of the Tulsa Daily World, then in that event in law he would be equally liable with the World Publishing Company for any and all injury done or damage incurred by reason of the publication therein of any libelous article. This would be true regardless of whether or not he wrote or knew of the article before it was published."

These two questions can be considered upon one proposition as to whether one who occupied the position similar to that of Eugene Lorton here is responsible for the publication made in his absence. We think this evidence establishes the fact that Lorton was the representative of the World Publishing Company, and in fact, so far as the entire management of the Tulsa Daily World was concerned, he was the World Publishing Company, that is, he conducted the policy of the paper, supervised it, managed it in all of its details, employed or assisted in employing those who operated it, and that his functions and his duties as well as his power, as testified to by himself, clothed him with more authority than that of the managing editor.

In R. C. L. vol. 17, p. 385, it is said:

"It has been held that the managing editor of a newspaper is equally liable with the proprietor and publisher in a civil action for the publication of a libelous article, whether he knows of the publication or not, as it is his business to know; and the fact that he is only editor in a particular department, and has no control over the department in which the article complained of appears, has been said to be immaterial."

In 25 Cyc. 429, the rule is stated thus:

"The managing editor of a newspaper is equally liable with the proprietor for the publication of a libelous article, and this whether he knows of the publication or not. as it is his duty to know the contents of all articles published."

In Danville Press Co. et al. v. Harrison, 99 Ill. App. 244, it is said:

"Where a neswpaper is published and controlled by a corporation, one who is merely an officer of the corporation is not responsible individually for libelous publications made without his knowledge or consent, but it is otherwise where such officer is the general manager of the paper and authorized by the directors of the corporation to control its policy."

And it is further held that:

"Where the general manager of a corporation engaged in the publication of a newspaper neglects to control his employes in respect to what shall appear in the paper and a libel is published, such neglect is equivalent to a reckless disregard of the rights of others, equal to a wilful or intentional wrong. and renders both the manager and the corporation liable to be mulcted in exemplary damages."

In the body of the opinion, it is said:

"The evidence shows, however, that Beard was the general manager of the publication and was authorized by the directors to control the policy of the paper. He had also assumed to do this, and had employed Robinson, the editor who published the libel. We think Board as much responsible for the publication as if he knew the libel was about to be published and did not prevent it. In other words. a person cannot avoid liability by putting instruments of harm. which he is authorized and it is his duty to control, into the hands of others, and then by abandoning the same in the hands of his agent, be heard to say that the agent acted without his knowledge or consent, after the harm has been accomplished."

In Smith v. Utley. 92 Wis. 138, 65 N. W. 746, 35 L. R. A. 622, the Supreme Court of Wisconsin said:

"The law is well settled that the managing editor of a newspaper is equally liable with the proprietor and publisher for the consequences. in a civil action, for the publication of a libelous article; and this is so whether he knews of the publication or not. for it is his business to know, and mere want of knowledge constitutes no defense."

In Newall on Slander and Libel. § 480, it is said:

"The proprietor of a newspaper is responsible for a libel appearing in its columns, although the publication may be made in his absence and without his knowledge. But the mere fact that one is president. of and a stockholder in a corporation publishing a newspaper does not render him liable for a libel therein.

"As to the liability of a managing editor or editor in chief of a newspaper, the Amer-

ican cases are not in harmony. In Smith v. Utley, 92 Wis. 133 [65 N. W. 744] 35 L. R. A. 620, it was held that 'the managing editor of a newspaper is equally liable with the proprietor and publisher for the consequences in a civil action for the publication of a libelous article; and this is so whether he knows of the publication or not, for it is his business to know, and mere want of knowledge constitutes no defense.' A similar holding was made in Hunt v. Bennett, 19 N. Y. 173.

"On the other hand, the United States Court of Appeals held in Folwell v. Miller, 145 Fed. 495 [75 C. C. A. 489, 10 L. R. A. (N. S.) 332, 7 Ann. Cas. 455]: '* * * A person who is general manager of a newspaper owned by a corporation and is authorized by the directors to control the policy of the paper and assumes to do so and employs an editor who publishes a libel is liable therefor, though he knew nothing of the libel before its publication, and had not authorized it to be published.' "

See, also, Belo v. Fuller, 84 Tex. 450, 19 S. W. 616, 31 Am. St. Rep. 75; Nevin v. Spieckemann (Pa.) 4 Atl. 497.

The case of Folwell v. Miller, 145 Fed. 495, 75 C. C. A. 489, 10 L. R. A. (N. S.) 332, 7 Ann. Cas. 455, is relied upon by the plaintiff in error as authority for nonliabilty. A careful consideration of the facts in this case, in our judgment, removes the same from the doctrine laid down in Folwell v. Miller.

For the reasons above indicated, the judgment of the lower court is affirmed.

By the Court: It is so ordered.