PFISTER, Respondent, vs. THE SENTINEL COMPANY and others, Appellants.

*December 12, 1900 — January 8, 1901.*

*Libel: Newspaper publication: Report of "public official proceedings:"
Charge of bribery: Liability of officers of corporation.*

1. A newspaper publication stating that "there is a general supposition that" plaintiff and another "have, by means of their wealth and political power, obtained absolute control of the mayor and a ma-

jority of the councilmen" of a city, that "the officers thus directly
or indirectly bought are held in much public contempt," but "the
men who did the buying have in no wise lost caste," and plaintiff
continues to be an honorable leader in social circles — is not a re-
port of any "public official proceeding," within the meaning of
sec. 4256a, Stats. 1898, and is libelous *per se.*

2. Officers, stockholders, or members of a publishing corporation are
not liable for a libelous publication simply because of official posi-
tion or membership; but if they in any way aided, assisted, or ad-
vised its publication or circulation, or their duties as officers or
agents were of such a character as to charge them with the per-
formance of functions concerning the publication and circulation
of the paper, such duties being of such nature that the law implies
that such officers or agents knew or ought to have known of the
publication, they are liable and cannot defend on the ground merely
that they did not know about the libel until after it was published.

3. In an action for libel the complaint, liberally construed, charged
that certain defendants, who constituted a majority of the direct-
ors of a newspaper corporation, had caused the corporation, through
its newspaper, to adopt a policy of bitter opposition to a proposed
ordinance relating to a street railway company; that in following
out this policy they had caused violent and inflammatory articles
to be published defamatory of the plaintiff and insinuating that
he was guilty of criminal and unlawful methods in attempting to
secure the passage of the ordinance, and had been guilty of brib-
ery; and that in further continuance thereof they caused the false
and defamatory matter in question to be published and circulated.
*Held,* that a cause of action was stated against said directors.
*Simonsen v. Herold Co.* 61 Wis. 626, distinguished.

Appeal from an order of the circuit court for Milwaukee
county: D. H. Johnson, Circuit Judge. *Affirmed.*

Action to recover damages for libel. The following is a
summary of the complaint:

The defendant the *Sentinel Company* is a corporation, and
at the times hereinafter stated was the proprietor and pub-
lisher of a daily newspaper called the "Milwaukee Sentinel."
The defendant *Myrick* was its editor in chief, and had the
active management and control of the publication of said
newspaper. The defendants *Tweedy*, *Ilsley*, and *Rublee* were

Pfister vs. The Sentinel Co. and others.

directors of said corporation, and constituted a majority of said board. The plaintiff is a resident of Milwaukee, and a director in a corporation known as the Milwaukee Electric Railway & Light Company. On December 26, 1899, and for some months prior thereto, there had been pending before the common council of Milwaukee an ordinance authorizing said street railway company to construct and operate street railways over certain streets, providing for the rates of fare to be charged, and for the termination of all franchises theretofore granted to it or its successors or assigns. During the pendency of the ordinance the subject matter thereof had excited general interest, and had caused great public discussion in the newspapers and among the people, and concerning which there was considerable diversity of opinion. During this time it is claimed that the defendant *Myrick* and the said directors had caused the *Sentinel Company*, in its newspaper, to continuously oppose the adoption of said ordinance, and had caused to be published therein many violent and inflammatory articles opposing the adoption of said ordinance, and impugning the motives of the majority of the members of said council who supported the same, and insinuating that the plaintiff, with others, had secured, and were securing, and were seeking to secure, the votes of a majority of said council in favor of said ordinance by bribery and the use of other criminal and unlawful methods and influences; that at all of said times said defendants had maliciously pursued the plaintiff with insinuations of criminal acts and attempts in the premises, and maliciously and with intent to defame the plaintiff from day to day had caused to be published in said newspaper articles containing veiled insinuations that he was guilty of the crime of bribery in securing votes for said ordinance.

The sixth subdivision of the complaint is as follows:

"That on the 26th day of December, A. D. 1899, the defendant the *Sentinel Company*, as the publisher of said news-

paper, and the said defendant *Myrick*, as managing editor
thereof, and the said defendants *Ilsley*, *Tweedy*, and *Rublee*,
as the majority of the board of directors of the said corpora-
tion, who directed and controlled and were then controlling
its policy, with the intent to defame and injure the plaintiff
in his good name and reputation, published, printed, uttered,
and circulated in the said newspaper, the Milwaukee Sen-
tinel, throughout the city and county of Milwaukee and the
state of Wisconsin, of and concerning this plaintiff, the false
and defamatory matter following, namely:

" 'People naturally attack the franchise (meaning thereby
the said ordinance), and their fire was drawn by the flagrant
clause, " The fare shall be five cents." When the ordinance
(meaning the said ordinance) came up for amendment last
Monday (meaning the said 18th day of December, 1899),
the company (meaning the said The Milwaukee Electric
Railway & Light Company) made a concession. An amend-
ment was accepted, reading, " The fare shall not exceed five
cents." Then the conspirators (meaning and insinuating
thereby that this plaintiff and one Henry C. Payne had
conspired with others to improperly and illegally secure the
passage of said ordinance) overlooked a point. In deference
to a public sense of decency, they failed to call a midnight
meeting for the final passage of the measure, but called a
special meeting for next week.

" 'Opponents of the franchise (meaning thereby the said  .
·ordinance) have taken advantage of the breathing spell, and
Wednesday night obtained a temporary injunction, on the
ground of conspiracy between Payne (meaning thereby the
said Henry C. Payne) and *Pfister* (meaning thereby the
plaintiff), chief owners of the company (meaning thereby
the said The Milwaukee Electric Railway & Light Com-
pany), on one side, and the mayor and twenty-five members
of the council on the other (meaning thereby the mayor of
the city of Milwaukee and the said twenty-five aldermen who

Pfister vs. The Sentinel Co. and others.

voted in favor of the said ordinance), to defraud the city by granting a valuable franchise without adequate return to the city (meaning thereby to charge and insinuate that this plaintiff and said Payne had conspired with the said mayor and twenty-five aldermen to perpetrate a fraud upon the said city of Milwaukee). The people base their hope for relief upon a recent dictum of the Wisconsin supreme court which declares that it would not be tied down by precedent in the effort to right a wrong wherever found.

" ' There is a general supposition that Messrs. Payne (meaning thereby the said Henry C. Payne) and *Pfister* (meaning thereby this plaintiff) have, by means of their wealth and political power, obtained absolute control of the mayor and majority of the councilmen (meaning thereby the said mayor and the said aldermen), and the officers thus directly or indirectly bought are held in much public contempt (meaning and insinuating thereby that this plaintiff and the said Henry C. Payne had bribed the said mayor and the said twenty-five aldermen to vote for the said ordinance). In the meantime, in full accordance with our peculiar moral standards, the men (meaning thereby this plaintiff and the said Henry C. Payne) who did the buying (meaning thereby bribing the said aldermen and so corruptly influencing them in their official acts) have in no wise lost caste. Mr. Payne is looked up to in national political affairs, and *Mr. Pfister* (meaning thereby this plaintiff) continues to be an honorable leader in Milwaukee social circles.'

" And this plaintiff alleges that the said defendants published the said article of and concerning this plaintiff, and intended thereby to charge, and did thereby charge, that this plaintiff had corruptly given, offered, or promised to the said mayor and aldermen gifts or gratuities, money or things of value, or pecuniary or personal advantages, with intent to influence their votes, opinions, judgment, and actions upon the matter of the said ordinance which was then pending

before them in their official capacity, contrary to the statute of the state of Wisconsin, and in violation of the criminal code of said state.

"And this plaintiff alleges that thereupon, on the said 26th day of December, 1899, the said defendants procured to be distributed and circulated throughout the city and county of Milwaukee and state of Wisconsin and other states many thousand copies of the said newspaper containing the said defamatory matter."

The defendants jointly and severally demurred to the complaint on the ground, among others, that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and the defendants have appealed.

For the appellants the cause was submitted on briefs by *Van Dyke & Van Dyke & Carter*, attorneys, and *W. H. Timlin*, of counsel. They contended, *inter alia*, that the directors as such cannot be held liable for a tort of the managers. *Stone v. Cartwright*, 6 Term, 411; *Hewett v. Swift*, 3 Allen, 420; *Bath v. Caton*, 37 Mich. 199; *Bacheller v. Pinkham*, 68 Me. 253; *Weir v. Barnett*, 3 Exch. Div. 32; *Weir v. Bell*, id. 238; *Arthur v. Griswold*, 55 N. Y. 400; 3 Thomp. Corp. § 4097; *Fanning v. Osborne*, 102 N. Y. 441–448; *Simonsen v. Herold Co.* 61 Wis. 628; *Smith v. Utley*, 92 Wis. 136; *Dabold v. Chronicle P. Co.* 107 Wis. 357.

For the respondent there was a brief by *Quarles, Spence & Quarles*, and oral argument by *Charles Quarles*.

Bardeen, J. The first ground upon which it is sought to reverse the order appealed from is that the complaint shows upon its face that the publication in question was a newspaper report of a "judicial, legislative, or other public official proceeding authorized by law, and of some public statements in the course of such proceeding," and as such privileged under sec. 4256a, Stats. 1898. That section reads as follows: "The proprietor, publisher, editor, writer or reporter upon

any newspaper published in this state shall not be liable in any civil action for libel for the publication in such newspaper of a true and fair report of any judicial, legislative or other public official proceeding authorized by law, or of any public statement, speech, argument or debate in the course of such proceeding. This section shall not be construed to exempt any such proprietor, publisher, editor, writer or reporter from liability for any libelous matter contained in any head line or headings to any such report, or to libelous remarks or comments added or interpolated in any such report or made and published concerning the same, which remarks or comments were not uttered by the person libeled or spoken concerning him in the course of such proceeding by some other person. Any true statement, explanation, correction or retraction published without comment in any such newspaper within a reasonable time after any publication in violation of this section, or after the publication of any libelous matter, or in the next issue after notice of such publication, may be introduced upon the trial of any such action as a sufficient defense against any imputation of malice and against the recovery of any damages except actual damages."

Neither the scope nor constitutionality of this law is argued by the appellants. It is simply asserted that the matter published comes within the purview of the law, and the argument presented is in support of that view. If this argument is well founded, then the question suggested would properly be for consideration; if not, then the alleged libelous article must be considered, tested, and disposed of under the settled rules of law governing such matters.

We find no difficulty in the determination of this point. The chief reason urged by appellants in support of their position is that it nowhere appears in the complaint "that the report in question is not a true or is not a fair report of this public official proceeding." The difficulty with this contention is that the article in question is not, and does not pur-

port to be, a report of any such proceeding. On the contrary, after reciting that an injunction had been obtained on the ground of a conspiracy between Payne and *Pfister*, it charges that they have, by means of their wealth and political power, obtained absolute control of the mayor and a majority of the councilmen, and that the men who did the buying have in no wise lost caste; that Mr. Payne is looked up to in national affairs, and *Mr. Pfister* continues to be a leader in social circles. By what process of reasoning can it be said that this is a "true and fair report," or any report at all, of a judicial or other public official proceeding, or of any speech, argument, or debate in the course of such proceeding? Beyond the recitation that an injunction had been secured, there is nothing in the article that approaches the semblance of a report. The substance of the publication is plainly the opinion of the writer, couched in language easily understood and certain of intent. As stated in the opinion of the trial judge: "Here is a direct charge of bribery involving the plaintiff as one of the bribers; a strong charge to the effect that the moral sense of the community has fallen very low, because the plaintiff, and the others charged with him, appear without loss of caste in Milwaukee, and are leaders in political and social circles." The matter printed involves the conclusions and deductions of the writer, is clearly libelous *per se*, and from its very nature could not have been, and cannot by the most generous latitude of construction be construed to be, a report of a judicial or other public official proceeding. We think it sufficiently appears from the complaint that the imputations of bribery and corruption were distinctly the product of the defendants, and are of such a nature, when the whole article is considered, as not to come within the purview of the statute under the broadest or most liberal interpretation possible. If the validity of the statute be admitted, a publication, to be privileged, must have been made in good faith, must be a true

and impartial report of the matter involved, and without exaggeration or the introduction of irrelevant defamatory matter. The publication in question is very far from the line suggested, and hence the ruling of the trial court on this branch was amply justified. See *Buckstaff v. Hicks*, 94 Wis. 34.

2. The second ground of error is based upon the claim that the complaint does not state a cause of action as against the defendants *Ilsley, Tweedy*, and *Rublee*, who were directors of the defendant corporation. We have held that the publication in question was libelous, and therefore actionable. All persons engaged in publishing and circulating a libel are responsible therefor, and may be proceeded against either jointly or severally. Newell, Slander & L. 240; *Belo v. Fuller*, 84 Tex. 450; *Smith v. Utley*, 92 Wis. 133. Officers, stockholders, or members of a publishing corporation are not liable for a libelous publication simply because of official position or membership, unless they come within one of the exceptions hereinafter named. Their liability, if any, springs from their active agency in producing and circulating the libel. But if it be shown that they in any way aided, assisted, or advised its publication or circulation, or that their duties as officers or agents of the concern were of such a character as to charge them with the performance of functions concerning the publication and circulation of the paper, such duties being of such nature that the law implies that such officers or agents knew or ought to have known of the publication, they are liable, and cannot defend on the ground merely that they did not know about the libel until after it was published. This was distinctly held in *Smith v. Utley*, 92 Wis. 133, and the cases and text-books sustaining the proposition are there cited.

It is elementary law, as applied to code pleadings, that a complaint will not be overthrown on demurrer unless it is wholly insufficient. Every reasonable intendment is to be

made in its favor. *Morse v. Gilman*, 16 Wis. 504; *Miller v. Bayer*, 94 Wis. 123; *Valley I. W. Mfg. Co. v. Goodrich*, 103 Wis. 436; *Miles v. Mut. R. F. L. Asso., ante*, p. 421. In pursuance of this rule, and by aid of the statute (sec. 2668, Stats. 1898), " if the essential facts can be gathered from the pleading, or may reasonably be inferred from its allegations, it is good, though such allegations be in form uncertain, incomplete, and defective." See *Flanders v. Mc Vickar*, 7 Wis. 372; *Horn v. Ludington*, 28 Wis. 81; *Merrill v. Merrill*, 53 Wis. 522. A narrow rule seems to have been indicated in *Simonsen v. Herold Co.* 61 Wis. 626, in testing a complaint somewhat similar to the one in question. There the allegation was that the defendant Colman " was and is the principal proprietor of said Herold Company, and interested in, and proprietor and manager of, said newspaper." In the decision it was said, " The averment that he is manager of the newspaper does not *necessarily* import that he controls its columns." The real question at issue was whether it might *reasonably* have been inferred from all the allegations of the complaint that he had such control, and not whether any particular allegation *necessarily* imported such a conclusion.

The real question, therefore, is whether, by a fair and reasonable construction of all of its allegations, the complaint charges that these defendants caused this publication merely in the sense that they carried on the business affairs of the corporation, or whether, as such officers, they had adopted a policy for the corporation in opposition to the street-railway ordinance, and of abuse and defamation of plaintiff, and whether it may be reasonably inferred therefrom that the publication in question was made in consonance with and pursuant to the policy so adopted, so that it can be said their action comes within the rule of law stated. It is not claimed that the complaint shows that the directors, as such, were charged with duties with reference to the publication

and circulation of the newspaper from which the law would imply knowledge, and consequent liability for the publication of a libel, by virtue of mere official position. The complaint does not by positive allegation charge that the directors advised or counseled this specific libel. It does allege, however, that, during the pendency of said ordinance, *Myrick*, as managing editor, and the other defendants, as the majority of the board of directors, had caused the corporation, in its newspaper, to continuously oppose the adoption of said ordinance, and had caused the publication of many violent and inflammatory articles in opposition thereto, impugning the motives of the members of the council who favored the same, and insinuating that the plaintiff was seeking to secure votes therefor by bribery and other criminal and unlawful methods and influences, and had maliciously pursued the plaintiff with insinuations of criminal acts, and caused to be published in the said newspaper veiled insinuations that the plaintiff was guilty of bribery. A natural, and we may say a necessary, inference from these allegations is that the corporation, under direction of said defendants, had adopted a distinct line of policy in opposition to the ordinance and condemnatory of the plaintiff. Then follow the allegations quoted in the statement. While not stated in so many words, the inference follows as naturally and reasonably as though so stated that the libelous publication was made in pursuance of the policy theretofore adopted by said directors.

Construing the complaint with that liberality which the law demands, and indulging in every reasonable intendment to support it, we reach this conclusion: The defendants, who constitute the majority of the board of directors, had caused the corporation, through its newspaper, to adopt a policy of bitter opposition to the adoption of the proposed ordinance; that in following out this line of policy they had caused violent and inflammatory articles to be published

defamatory of the plaintiff and insinuating that he was guilty of criminal and unlawful methods in attempting to secure its passage, and had been guilty of bribery; that in further continuance thereof they caused the false and defamatory matter mentioned to be published and circulated. Their liability, if any, must rest upon the fact that they have, by their official action as directors, caused the corporation to adopt a slanderous policy towards plaintiff, which resulted in the publication and circulation of the alleged libel. It may be that the proof will fall short of the allegation. With that we have no concern. We deal only with the allegations of the complaint and the natural and reasonable inferences arising therefrom. Considering such allegations, and indulging such inferences, we conclude that sufficient appears in the complaint to bring the defendants within the rule of responsibility before mentioned.

It is in the respect heretofore suggested that the complaint herein differs from that in *Simonsen v. Herold Co.* 61 Wis. 626, and is, therefore, distinguishable from it. It is not to be understood that such directors are responsible merely because they have, by official action, caused the corporation to adopt a policy of opposition to the ordinance and critical of plaintiff. Such policy must be shown to be one of vilification and libel, and it must appear that the publication in question was made pursuant thereto, or that they actually advised or counseled this specific act; else they cannot be held liable.

*By the Court.*— The order appealed from is affirmed.