DAVIS v. KUIPER.

1. CORPORATIONS—BY-LAWS—PRESIDENT—GENERAL MANAGER.
   By-laws of defendant corporation providing that "the president shall be the chief executive officer of the company, and in the recess of the board of directors shall have the general control and management of its business and affairs" conferred upon the president the powers of a general manager.

2. LIBEL AND SLANDER—PARTICIPATION BY INDIVIDUAL DEFENDANT—QUESTION FOR JURY—EVIDENCE.
   Evidence presented in action for libel held, sufficient to present for consideration of jury the issue of whether the connection of defendant president to defendant corporate publisher was such as to include him among those responsible for series of claimed libelous cartoons and editorials against plaintiff mayor, where it appears he functioned as general manager, had imposed a restriction upon the seller of the publication who was continued as editor, was given a copy of each issue before distribution to subscribers, generally approved the editor's

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur, Corporations § 915 et seq.
[2] 13 Am Jur, Corporations § 1096.
[3–6] 41 Am Jur, Pleading §§ 340-343.

conduct, and, in declining to publish a retraction as requested, did not claim nonparticipation.

3. JUDGMENT—SUMMARY JUDGMENT.

A court may enter a summary judgment for the defendant only where there are no issues of fact which, if resolved in favor of plaintiff, would entitle him to a judgment (Court Rule No 30 [1945]).

4. SAME — SUMMARY JUDGMENT — EXISTENCE OF ISSUES OF FACT — PLEADING — AFFIDAVITS.

On motion for summary judgment the existence of an issue of fact is determined by a consideration of the pleadings and the affidavits (Court Rule No 30 [1945]).

5. SAME—SUMMARY JUDGMENT—PLEADING—ISSUES OF FACT.

Granting defendant's motion for summary judgment was error, where there were factual issues raised in the declaration which, if supported by competent proof, could result in a judgment against defendant.

6. SAME—SUMMARY JUDGMENT—ISSUES OF FACT—PRESIDENT OF COR- PORATE PUBLISHER—LIBEL.

Summary judgment for defendant president of corporate pub- lisher of concededly libelous publications, including cartoons, was improperly entered, where there were issues of fact for jury consideration as to such defendant's knowledge of the situation, his conduct with reference thereto, and responsibility for the publications.

Appeal from Kent; Hoffius (Stuart), J. Submitted April 13, 1961. (Docket No. 76, Calendar No. 49,026.) Decided September 22, 1961.

Case by Stanley J. Davis against William Kuiper, Sr., Larry Asman, and Songs of the Church, Inc., a Michigan corporation, for libel. Summary judgment entered as to defendant Kuiper on motion. Plaintiff appeals. Reversed and remanded for further proceedings.

*Warner, Norcross & Judd (Harold S. Sawyer* and *Guy Vander Jagt,* of counsel), for plaintiff.

*Varnum, Riddering, Wierengo & Christenson (L. K. Varnum* and *Peter Armstrong,* of counsel), for defendant Kuiper.

*Amicus Curiae:*

*Philip Weiss* and *Jesse R. Bacalis,* for Michigan Press Association.

Carr, J. This is an action for damages resulting from publications of defamatory matter concerning the plaintiff, charged against the 3 defendants. The defendant corporation, Songs of the Church, Inc., was organized in 1956. Its amended articles of incorporation set forth its purposes as:

"To buy, sell, distribute, and otherwise deal in all kinds of goods, wares, and merchandise, and specifically but not by way of limitation, to purchase, sell, and distribute recorded religious music; and to make and manufacture recordings of religious music; and to sell, distribute, and otherwise deal in said recordings of religious music; and the dissemination of Christian news."

Defendant Kuiper, the owner of 50 shares of stock in the corporation, was made president. His son, who held 25 shares, was vice-president, and Peter J. VandenBosch, owning likewise 25 shares, was secretary. It appears, further, that June Hamersma held 10 shares of stock, but apparently she took no part in the matters involved in the instant case. The 3 officers named constituted the board of directors.

On July 31, 1959, the defendant corporation, by action of its board of directors, purchased a paper previously owned, edited, and published by defendant Asman under the name of Protestant News. Asman

was continued as editor of the paper. It is the claim of the plaintiff as set forth in his declaration in the cause that the alleged libelous matter constituting the basis of the action for damages was published in said paper, the name of which was changed to Christian News. The declaration averred in count 1 thereof that in February, 1960, the defendants, "acting in concert as well as severally, caused to be published an issue of the Christian News entitled Volume 1, No. 11, February 1960, which publication was caused to be circulated and distributed on its original circulation to upwards of 5,000 families in and about the city of Grand Rapids." The declaration further averred that in said publication there appeared a cartoon, a copy of which was attached to the pleading, which by inference and conclusion accused plaintiff, who was the mayor of the city, of accepting money from liquor sources and participating in attacks on Christianity, including churches and missions, as well as interfering with the law enforcement activities of the Grand Rapids police department. The falsity of such implications was specifically alleged.

Count 2 of plaintiff's declaration further set forth that in the March, 1960, issue of the Christian News there appeared another cartoon, copy of which was attached, depicting plaintiff as accepting a bribe from a pictured character representing unlawful activities, and as receiving therefrom votes in exchange for money. The falsity of the inferences suggested by said cartoon was asserted, and defendants were accused of intentionally publishing and circulating the same with the malicious intent to injure plaintiff by defaming and damaging his character and reputation.

Also included in the March, 1960, number of the Christian News appeared what purported to be a reprint of a letter asserting in substance that plain-

tiff's attitude and record in the matter of law enforcement was such as to render him totally unfit for public office. Count 3 of the declaration was based on such publication, it being averred that the charges against plaintiff were false and made for the same purpose and with intent as alleged with reference to the cartoons. It is conceded that said cartoons were drawn by defendant Asman and that he caused the letter above mentioned to be printed in the Christian News. Based on the nature and content of the alleged libelous publications the conclusion may scarcely be avoided that their purpose was to injure the reputation of the plaintiff in the community and thereby defeat him for re-election to the office that he held.

The defendants each filed answer to the plaintiff's declaration, defendant Kuiper asserting that he did not participate in the publication and circulation of the alleged defamatory matter set forth by plaintiff in such manner or to such an extent as to render him liable for the consequences thereof. In substance, it was Kuiper's position that Asman was responsible for what was done, and that none of the officers of the corporation was responsible for said acts. Said answer denied plaintiff's averments that defendant Kuiper had participated in the acts on which plaintiff based his cause of action.

On behalf of defendant Kuiper a motion for summary judgment was also filed, supported by the affidavit of said defendant and also by affidavits made by his son and by the secretary of the corporation. Statements made in such affidavits were in accord with the answer filed by defendant Kuiper and in substance asserted nonparticipation by him in the publication of the libelous matter. Plaintiff did not file affidavits but on the hearing of the motion for summary judgment was permitted to offer testimony in lieu thereof. Accordingly, and by permis-

sion of the court, defendants Asman and Kuiper were examined at some length by counsel representing the respective parties. At the conclusion of such proofs the circuit judge before whom the motion was heard concluded that no issue of fact had been presented as to which the plaintiff was entitled to trial before a jury. An order was entered granting the motion and plaintiff has appealed.

On behalf of appellant it is insisted that under the pleadings, the affidavits, and the oral testimony there were issues of fact as to the liability of defendant Kuiper and that the circuit judge was in error in holding otherwise. It is asserted that it was for the jury to determine whether defendant Kuiper had knowledge of the libelous matter inserted in the Christian News by Asman before the publication thereof, and that there was also a question for jury determination as to the extent of authority possessed by Kuiper with reference to the periodical in question. It is also appellant's claim that under the circumstances of the case, as indicated by the affidavits and the testimony, and the inferences to be drawn therefrom, whether defendant Kuiper had failed in the performance of duties resting on him, particularly in connection with the publication of the libelous matter, was likewise for determination by a jury. On behalf of appellee it is insisted that on the record made the trial judge properly disposed of the motion for summary judgment.

The by-laws of the defendant corporation specified in article 5 thereof that:

"The president shall be the chief executive officer of the company, and in the recess of the board of directors shall have the general control and management of its business and affairs, subject, however, the [to] the right of the board of directors to delegate any specific power except such as me [may] be

by statute exclusively conferred upon the president, to any other officer or officers of the company."

The corporation had no officer bearing the title of "general manager." However, the language of the by-law quoted above would seem to indicate that it was intended that the president should as a practical proposition act in that capacity. The granting to him of the general control and management of the corporate business and affairs is scarcely consistent with any other conclusion.

The testimony of defendant Asman on the hearing of the motion for summary judgment is significant as indicating his attitude toward the appellee. It appears that in December, 1959, Asman caused to be published in the Christian News a notice or statement referring to appellee as the "owner of the Christian News." Examined with reference to such statement Asman testified that due to the fact that Kuiper was president of the corporation, and that most of his contacts were with him personally, he had made the statement, although as a matter of fact the corporation was itself the owner. The following excerpt from the testimony indicates the condition in this respect:

"*Q.* Was he actively in charge of the operation? Is that why you perhaps used that designation?

"*A.* In charge of the operation of the Songs of the Church?

"*Q.* Yes, and the newspaper?

"*A.* Well, Mr. Kuiper is president of the Songs of the Church, so when I made any contact regarding the paper, I usually talked with him.

"*Q.* He was the person in active control of the affairs of Songs of the Church, as far as you know?

"*A.* As far as I was concerned, why he was the proper man to see."

Mr. Asman further testified with reference to the procedure that was observed after the printing of the periodical and before its distribution, which was apparently handled under contract by an organization referred to as the Gem Letter Service. The following excerpt indicates the general tenor of such testimony:

"*Q.* When you drew these cartoons, commencing with the month of February, the publication on February, did you send any copy of this cartoon at all, or give it at all to the attention of Mr. Kuiper or any of the members of your board of directors?

"*A.* No, I didn't.

"*Q.* They had not seen the cartoon until it was published in the paper?

"*A.* That's right.

"*Q.* I presume they promptly received copies of the paper, however, on this publication?

"*A.* Yes, we give them copies of the paper promptly after it comes off the press each month.

"*Q.* When you say 'promptly,' how promptly would that be?

"*A.* That would be the same day that I am able to pick up a finished copy from the printer.

"*Q.* I am handing you now the copy of the Christian News, which has been marked exhibit 6, for identification, and calling your attention to the cartoon appearing on the reverse, on the back page of exhibit No. 6, you drew that cartoon, I assume?

"*A.* Yes.

"*Q.* It bears your name?

"*A.* Yes.

"*Q.* And you say that that cartoon, and the paper on which it was a part, was transmitted to Mr. William Kuiper, the date of its publication?

"*A.* Yes, that was my usual procedure, the day it was off the press, I would take a number of copies over to Mr. Kuiper and his associates.

"*Q.* And when did you get out your mailing of the paper?

"*A.* That follows within a few days, whenever the letter shop is able to work it in, usually within 3 days.

"*Q.* So that before this paper was put in the mail and transmitted to your mailing list it had been in the hands of Mr. William Kuiper for about 3 days probably?

"*A.* Well, that would not be possible for me to say accurately; sometimes it went out the same day that it came off the press, but it was during the 3-day interval. He might have had it only 1 hour or he might have had it 3 days. It is hard to say.

\*   \*   \*

"*Q.* Then you say, that as a general rule these papers would go out about 3 days after they came off the press?

"*A.* Within 3 days. I don't think it would be later than 3 days, usually earlier.

"*Q.* And immediately upon publication, Mr. Kuiper was given a copy; as soon as it came off the press he was delivered copies of this February issue?

"*A.* That's correct."

It further appears that defendant Asman wished to have printed an additional 2,000 copies of the February issue of the Christian News and that he contacted defendant Kuiper and asked authority to have such copies printed, receiving approval therefor. Asman further testified that if defendant Kuiper had told him not to publish or distribute the paper he, Asman, would not have done so. The inference may properly be drawn that Asman regarded Kuiper as having authority to speak on behalf of the corporation which was the publisher of the periodical. That appellee actually had such authority is indicated from the above excerpt from the by-laws as well as by the conduct of the parties. It is a fair conclusion from the testimony of defendant Asman that he would not have caused to be printed in the Christian News any article, or other

matter, if he had had reason to believe that the president of the corporation, and in effect its acting manager, disapproved thereof.

It is also of some significance that the board of directors of Songs of the Church, Inc., at the meeting at which the purchase of the Protestant News from defendant Asman was approved, specified, in connection with the agreement that Asman should continue as editor, the imposition of "the restriction that articles of the nature of extreme biased viewpoint against organizations and individuals are not to be printed." With reference to such matter defendant Kuiper testified as follows on the hearing of the motion in circuit court:

"*Q.* I assume, from the inclusion of the restriction in your minutes, allowing Mr. Asman to continue as editor of the paper, that you were aware that he was given to intemperances, or that he was biased in his articles on occasion?

"*A.* I would say especially regarding the Catholic issue, yes; and we wanted to protect ourselves against those things happening.

"*Q.* And you were also concerned about his attacks on individuals on occasion?

"*A.* That naturally would cover the whole picture, wouldn't it?

"*Q.* You would say organizations and individuals?

"*A.* That's right.

"*Q.* So you knew his history had been such; at least some evidence of this had come to your attention?

"*A.* Yes, I would say so.

"*Q.* And after you commenced the financing and operation of this paper, putting him in control, did you take any steps to observe whether or not this instrument was being used by Mr. Asman as it might have been in the past?

"*A.* What do you mean by 'taking steps'?

"*Q.* Did you make any surveillance of what was coming out from under the hands of Mr. Asman, in this paper?

"*A.* Well, the general production was satisfactory."

This testimony would indicate that appellee paid sufficient attention to Mr. Asman's work as to be able to form a conclusion that in general it merited his approval. It is also obvious that he fully understood the reason for imposing the restriction on the publication of certain articles. Obviously the board of directors had sought to guard against the publication of unwarranted attacks on organizations and individuals. Appellee's connection with the publication of the periodical was such as to impose on him as a part of his control over the business affairs of Songs of the Church, Inc., an obligation to see that the restriction was upheld. If with knowledge of the publications involved in the instant case he took no action, the conclusion would seem to follow that the attacks on the honesty and integrity of the plaintiff met with his approval, and were consistent with the general policy observed in the publication by the corporation of the Christian News.

It may also be noted that prior to the starting of the instant case counsel representing the plaintiff addressed to the 3 defendants a demand for retraction of the alleged libelous statements and cartoons published in the Christian News. Reply to such demand was made on March 18, 1960, by the corporate defendant, its secretary signing the communication. Retraction was refused on the ground that:

"We are of the opinion that the publication was not libelous, slanderous, or defamatory."

No claim is made that appellee was not aware of the refusal to make the requested retraction, nor

is it claimed that he did not approve of such refusal. Defendant Kuiper did not at that time base the refusal to retract on his part on the claim that he was not in any way a participant in the publication of the alleged libelous matter referred to in plaintiff's demand.

Unquestionably each controversy of this nature must be determined on the basis of the law, and the facts appearing in the record before the court, including legitimate inferences that may be drawn from established facts. In support of his claim that he is entitled to have his right to recover against appellee determined on trial before a jury plaintiff has cited *Cyrowski* v. *Polish-American Publishing Co.,* 196 Mich 648. There plaintiff sued for damages for alleged libel, the action being brought against the publishing corporation and its general manager. The latter claimed that he was not personally liable, but the trial court submitted the issue to the jury which returned a verdict against both defendants. In affirming the judgment this Court said (p 659):

"Complaint is made of the charge of the court in that it did not give the defendants' theory of the case and did not give proper instructions as to the liability of defendant Welzand and on the subject of malice. The article being clearly libelous *per se,* and the defense being justification in which the defendants admittedly failed, the trial judge was justified in submitting to the jury the only real question for their consideration, to wit, damages, which he did in a clear and able charge which outlined the entire situation with great fairness. Mr. Welzand was a stockholder, director, and general manager of the publication. It appeared from the evidence that Zielinski, the editor, told Welzand that he was going to write about the plaintiff after he had received the pamphlet of the Civic Uplift League, and that the writers of the paper's editorials were under his authority and discipline. Welzand testified that after

reading the article he called Zielinski's attention to·
the fact that they might get into trouble over pub-
lishing it, but did nothing to prevent him from writ-
ing further on the subject, and, after answering·
plaintiff's letter demanding a retraction, made no·
effort to see that a retraction was published. His·
connection with the corporation was such that the·
court was justified in submitting his liability to the·
jury."

As bearing on the legal principles involved in a·
controversy of this nature, see, also, *Pollasky* v.
*Minchener,* 81 Mich 280 (9 LRA 102, 21 Am St Rep·
516) ; *Wines* v. *Crosby & Co.,* 169 Mich 210 (39 LRA
NS 901, Ann Cas 1913D, 1055) ; *Smith* v. *Utley,* 92
Wis 133 (65 NW 744, 35 LRA 620) ; *Pfister* v. *The
Sentinel Co.,* 108 Wis 572 (84 NW 887).

In *Klug* v. *Berkley Homes, Inc.,* 334 Mich 618, the·
trial court on motion entered a summary judgment
in favor of the defendants. On appeal this Court
vacated the judgment and remanded the cause for·
further proceedings. In discussing the matter it was
said (p 621) :

"A court may enter a summary judgment for the·
defendant only where there are no issues of fact
which, if resolved in favor of plaintiff, would en-
title him to a judgment. See Court Rule No 30
(1945) ; *Whittenberg* v. *Carnegie,* 328 Mich 125.

"The existence of an issue of fact is determined by
a consideration of the pleadings and the affidavits.
*Baxter* v. *Szucs,* 248 Mich 672, 675; *Bed* v. *Fallon,*
307 Mich 466, 472; and *Robertson* v. *New York Life
Insurance Co.,* 312 Mich 92, 98.

"The affidavit in support of defendants' motion for·
a summary judgment does not deny or even mention
the pleaded promise to repair the house and replace·
the defective materials. It is, therefore, insuffi-
cient.

"It does not state that the written contract em-
bodies the entire agreement between the parties and,.

therefore, defendants' reliance upon the parol evidence rule is unwarranted. *Clare County Savings Bank* v. *Featherly,* 173 Mich 292, 301.

"There are factual issues raised in the declaration which, if supported by competent proof, could result in a judgment against defendants. The court, therefore, erred in granting defendants' motion for a summary judgment."

The question at issue in the instant case is whether the circuit judge was correct in granting the motion for a summary judgment in favor of defendant Kuiper. Our examination of the pleadings, the affidavits filed in support of the motion, and the testimony taken in open court on the hearing, construed in the light of prior decisions in this State, leads us to the conclusion that it may not be said that there are no issues of fact which if determined in plaintiff's favor would entitle him to recover. Inferences may be drawn from established facts, and the record considered in its entirety, with special reference to excerpts from testimony above quoted, indicates that issues are involved in the controversy bearing on the question as to appellee's knowledge of the situation, his conduct with reference thereto, and his responsibility for publications concededly libelous in character. We are impressed that plaintiff is entitled to have these matters determined on trial before a jury.

The order granting the motion for summary judgment is set aside, the judgment vacated, and the case remanded for further proceedings.

KELLY, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

DETHMERS, C. J., did not sit.