Julie MAYNARD, Plaintiff-Appellant-Petitioner,

v.

PORT PUBLICATIONS, INC., Defendant-Respondent,

Michael FELLNER, Ruth Ticktin and Ken Mate, Defendants.

Supreme Court

*No. 78–602. Argued September 29, 1980.—
Decided October 28, 1980.*

(Also reported in 297 N.W.2d 500.)

For the appellant-petitioner there were briefs by *Michael E. Ehrsam* and *Bell, Metzner & Siebold, S. C.,* of Madison, and oral argument by *Carroll Metzner.*

For the respondent there was a brief by *Harry F. Peck, Louise A. Ptacek* and *Petrie, Stocking, Meixner & Zeisig, S. C.,* of Milwaukee, and oral argument by *Harry F. Peck.*

Amicus curiae brief was filed by *David Shute, D. Craig Mikkelsen* and *Foley & Lardner* of Milwaukee, for Wisconsin Civil Liberties Union.

WILLIAM G. CALLOW, J. We granted review in this case to decide whether a contract printer without knowledge of the content of the material it prints is subject to liability for defamation arising from the printing of the material and whether summary judgment was properly granted in favor of the defendant printer. We hold that a contract printer having no knowledge of the content of the material it prints cannot be subject to liability for defamation resulting from such printing and that the defendant printer was entitled to summary judgment.

## I.

The defendant Port Publications, Inc., (Port) is a Wisconsin corporation engaged in the business of publishing and printing a variety of newspapers, periodicals, and similar publications. Port's operations can be divided into two functions. As a publisher it writes, edits, prints, and publishes certain publications, including the *Ozaukee Press, Sailing Magazine, Port Fisherman,* and the *Ozaukee County Advertiser.* As a contract printer Port accepts material which has been written, edited, or otherwise prepared by other organizations and, for a fee, reproduces it on its photo-offset printing ma-

chinery. Publications which Port produces in its capacity as a contract printer include *Vegetarian Times, Christian Courier, WFMR Guide, Wisconsin Conservatory Bulletin,* and several others including the newspaper *Take Over.* The individual named defendants in this lawsuit are alleged to own and to have editorial responsibility for the production of Take Over. They are not parties to this review.

The February 9–26, 1976, issue of Take Over contained a photograph of the face of the plaintiff-petitioner, Julie Maynard (Maynard), imposed upon the nude figure of another woman. Accompanying the photograph, which is alleged to be "obscene, malicious and defamatory," was an article which Maynard alleges contained "false, malicious and defamatory statements" about her.

Routine procedures were followed by Port in the contract printing of the February 9–26, 1976, issue of Take Over in accordance with its business arrangements with that newspaper. Take Over personnel delivered to Port photographic negatives of the paper's "layout," which is the arrangement of the material to be printed in the position in which it is to appear. Port then transferred the image from the negatives onto offset plates, a process which takes approximately one-half hour. The offset plates were then mounted on an offset printing press which, through the offset printing process, ultimately transferred the image onto a printed page. Port's offset printer is capable of printing approximately 20,000 copies of a 32-page newspaper per hour. Port admits that it did not attempt to read or investigate the truth or falsity of the material in the negatives supplied to it by Take Over and that it does not customarily read the negatives supplied to it for printing by its contract printing customers.

Maynard initiated this defamation suit against Port and the personnel of Take Over, seeking $50,000 in com-

pensatory and $25,000 in punitive damages. Port moved for and was granted judgment on the pleadings based upon Maynard's original complaint and Port's answer, and Maynard filed an amended complaint. Port moved to dismiss Maynard's amended complaint for failure to state a claim upon which relief could be granted. That motion was denied. Port then answered and subsequently moved for summary judgment. Based upon the pleadings and affidavits submitted by several Port employees and a counteraffidavit submitted by Maynard's attorney, Port's motion was granted by the trial court on the theory that Port, for constitutional reasons, had no duty to investigate the truth of the content of Take Over. The court of appeals affirmed, holding that the mere mechanical act by Port in reproducing, as a contract printer, material furnished by a customer is constitutionally privileged and that summary judgment was properly granted. We affirm the decision of the court of appeals, but we do not adopt its reasoning.

In reviewing an order granting summary judgment, we begin with an examination of the pleadings to determine whether a claim for relief has been stated. *Grams v. Boss,* 97 Wis.2d 332, 338, 294 N.W.2d 473 (1980); *Kanack v. Kremski,* 96 Wis.2d 426, 430, 291 N.W.2d 864 (1980). The inquiry then shifts to whether there exists any material issues of fact. Pursuant to sec. 802.-08(2), Stats., summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This is also the standard which governs our review. *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis.2d 349, 356, 286 N.W.2d 831 (1980); *Wright v. Hasley,* 86 Wis.2d 572, 577–78, 273 N.W.2d 319 (1979).

The material allegations of Maynard's amended complaint, as they relate to Port, are as follows:

"7. That upon information and belief the defendant, Port Publications, Inc. is the printer of the aforementioned 'Take Over' newspaper and has been employed in that capacity for a number of years; that on prior occasions Port Publications, Inc. had refused to print certain issues of 'Take Over' because of libelous and defamatory material that was contained in certain articles.

"8. That on February 9, 1976, or prior thereto, the defendants maliciously prepared, composed and caused to be printed and published in the February 9-26 issue of the newspaper 'Take Over' an article entitled 'February Valentine Queen Julie Maynard' a copy of which is attached hereto and marked Exhibit A, which article contains false, malicious and defamatory statements relative to the plaintiff herein, Julie Maynard; that the aforementioned news article contained the following false, malicious and defamatory matter concerning the plaintiff:

"At the same time, she continued, my brother who is now employed by the Army in a top security clearance job, began taking sexual liberties with me. When I complained of his advances to my mother, she would curse me and beat me. Thank God I found a father figure neighborhood policeman who rescued me from juvenile detention.

"[9.] That the aforementioned article was also accompanied by a photo of Julie Maynard's face, which is imposed on a drawing or picture of a grotesque nude woman; that said picture is obscene, malicious and defamatory.

"10. That the defendants then and there maliciously and wrongfully published, or caused the publication of said false and defamatory articles in 'Take Over', a newspaper of general circulation in the City of Madison, Dane County, Wisconsin.

"11. That the defendants prepared, printed or caused to be printed and published the false, malicious and defamatory statements and picture in Exhibit A willfully and with intent to injure the plaintiff.

"12. That at the time of printing the aforementioned defamatory article, the defendants knew that the words thereof were false and untrue and in publishing said defamatory publication, the defendants acted with malice toward the plaintiff."

It was upon these allegations that the trial court denied Port's earlier motion to dismiss the complaint for failure to state a claim upon which relief could be granted. We are satisfied that these allegations constitute a claim upon which relief can be granted against Port for defamation. *See: D'Amato v. Freeman Printing Co.,* 38 Wis. 2d 589, 157 N.W.2d 686 (1968) ; *Olston v. Hallock,* 55 Wis.2d 687, 201 N.W.2d 35 (1972). *See also:* Restatement (Second) of *Torts,* sec. 558 (1977).

The affidavits and other papers supporting and opposing the motion for summary judgment must then be examined to determine whether there is a genuine issue as to any material fact. In support of its motion, Port submitted affidavits of its president, William F. Schanen, III, and two of its employees, Joseph Evraets, offset plate maker, and Edna Plier, business manager. Schanen's affidavit details the photo-offset printing process as it is utilized by Port. It describes the business relationship between Port and Take Over as it existed before and at the time of the defamatory issue, and, most significantly, states that with respect to the issue in question, Port, its agents, or employees did not read or attempt to read the photographic negatives submitted by Take Over for printing. The affidavit states that it is customary for Port, acting as a printer, not to read the materials presented to it in the form of photographic negatives for offset printing. As a consequence, the Schanen affidavit states that

"49. At and after printing the allegedly defamatory materials which are the subject of this litigation, Defendant was unaware of the content of the issues of

'Take Over' in question and neither knew, believed nor suspected that the materials contained therein might have been inaccurate, false or defamatory."

The affidavit of Evraets, the plate maker, corroborates the Schanen affidavit by stating that in making the offset plates, from which the materials are ultimately printed, he does not attempt to read the material contained in the negatives and that he did not make such an attempt with the negatives involved in the issue in question.

Although Maynard's amended complaint contains allegations that the defendants had knowledge of the falsity of the material contained in the subject issue, "an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial." Sec. 802.08(3), Stats. In opposition to Port's motion for summary judgment, Maynard's counsel submitted an affidavit containing excerpts from the oral depositions of Schanen and defendant Michael Fellner dealing with two prior occasions on which Port refused to print photographs depicting male genitalia.[1] Schanen testified that Port refused to print the pictures because they were believed to be obscene, and it was thought that printing them would violate Wisconsin's obscenity laws. The excerpt from the Fellner deposition indicates Fellner's belief that there was a misunderstanding regarding the December, 1973, issue of Take Over containing a photograph depicting Madi-

---

[1] The first occasion involved a photograph of two nude men touching each other's genitalia submitted by the Madison Gay Community. The second concerned a photograph depicting Madison Mayor Paul Soglin and Chief of Police David Couper in the nude, along with a caption stating "Soglin Brings Couper Affair To Climax."

son's mayor and chief of police in the nude. The misunderstanding, as testified to by Fellner, was whether the photograph, as it was finally printed by Port, with black boxes covering the genitalia of the men pictured, was to carry the statement that the photograph was " '[c]ensored by the printer.' " On the strength of these deposition excerpts, Maynard's counsel's affidavit concludes:

"(7) That the testimony of both Mr. Schanen and Mr. Fellner indicates that on at least two occasions prior to the libelous publication of the plaintiff, Port Publications had acted as an editor or censor in refusing to print what it termed obscene material; that Port Publications, Inc. therefore owed a duty to plaintiff to refuse to print the libelous publication about her; that there is therefore an issue of triable fact by the jury as to whether Port Publications, Inc. met this duty and summary judgment is not proper."

We have stated that affidavits supporting or opposing summary judgment must contain only evidentiary facts; ultimate facts or conclusions of law should be disregarded. *Ruchti v. Monroe,* 83 Wis.2d 551, 558, 266 N.W. 2d 309 (1978) ; *Hopper v. Madison,* 79 Wis.2d 120, 130, 256 N.W.2d 139 (1977). Accordingly, the most we can glean from the affidavit of Maynard's attorney is that on two occasions Port declined to print photographs of nude males, than on one of those occasions it printed the photograph after placing black boxes over the genitalia, and that on that occasion there was a dispute over whether the black boxes should contain language to the effect that the areas covered were censored by Port.

The summary judgment procedure is designed to eliminate unnecessary trials. The procedure is not a substitute for a trial, but rather a determination that there is no triable issue of fact presented. *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis.2d at 356; *Alonge v. Rod-*

*riquez,* 89 Wis.2d 544, 553, 279 N.W.2d 207 (1979). The moving party must "establish a record sufficient to demonstrate to the satisfaction of the court that there is no triable issue of material fact on any issue presented. *Heck & Paetow,* 93 Wis.2d at 356. Any reasonable doubts as to the existence of a factual issue must be resolved against the moving party. *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis.2d 555, 566, 278 N.W.2d 857 (1979). Finally, summary judgment should not be granted where "reasonable inferences leading to conflicting results can be drawn from undisputed facts." *Jones v. Sears Roebuck & Co.,* 80 Wis.2d 321, 325, 259 N.W.2d 70 (1977).

We believe Port, the moving party, has established a record sufficient to indicate the absence of any issue of material fact. The affidavits submitted on behalf of Port state it had no knowledge of the content of the issue of Take Over in question because no employee read or attempted to read the photographic negatives prior to the making of the photographic plates; Maynard offers no opposing proof in this regard. Maynard states that on two occasions Port refused to print certain material for Take Over; Port acknowledges having done this in compliance with Wisconsin obscenity laws.[2] The operations of Port as a contract printer and the procedures followed in the photo-offset printing process are

---

[2] Sec. 944.21(1)(a), Stats., provides: "(1) Whoever intentionally does any of the following is guilty of a Class D felony:

"(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film."

This section has since been declared unconstitutional. *See: State v. Princess Cinema of Milwaukee,* 96 Wis.2d 646, 292 N.W.2d 807 (1980).

not disputed by Maynard in affidavits or other papers. This record supports Port's motion for summary judgment. *See:* Sec. 802.08(3), Stats.

Maynard argues that the excerpted portions of the Schanen and Fellner depositions create an issue of material fact regarding whether Port, by refusing on previous occasions to print photographs of nude men, has in some respect stepped out of its role as contract printer and into the role of editor or censor. The prior refusals give rise to competing inferences, claims Maynard, that (1) Port was concerned about violating the obscenity laws, or (2) it was editing or censoring a newspaper. As noted earlier, we deal only with reasonable inferences, and thus we must determine whether the undisputed facts are such that reasonable persons might differ as to their significance. *Kraemer Bros. v. United States Fire Ins. Co., supra* at 567. We do not believe that these two instances, when Port because of the obscenity statutes refused to print certain photographs, support a reasonable inference that Port assumed editorial or censorship responsibilities with respect to Take Over.

Having concluded there are no genuine issues of material fact nor any reasonable competing inferences to be drawn from any undisputed facts, we move to the final step in the summary judgment analysis: whether, given this record, Port is entitled to judgment as a matter of law.

We must begin with the premise that liability for defamation cannot be found when no fault exists on the part of the defendant. This has been noted by both legal scholars[3] and the United States Supreme Court:

---

[3] "In the interest of our traditional freedom of expression, it is not clear that the losses due to innocently inflicted harm to reputation should be borne by the publishing industry, or a fortiori by the individual speaker—particularly if libel, and some forms of slander, are to be actionable without proof that harm has occurred." Prosser, *The Law of Torts,* sec. 113, 773 (4th ed. Hornbook Series 1971).

"We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. This approach provides a more equitable boundary between the competing concerns involved here. It recognizes the strength of the legitimate state interest in compensating private individuals for wrongful injury to reputation, yet shields the press and broadcast media from the rigors of strict liability for defamation." (Footnote omitted.) *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347–48 (1974).

We have cited this language before. *See: Giwosky v. Journal Co.*, 71 Wis.2d 1, 16 n. 12, 237 N.W.2d 36 (1976); *Calero v. Del Chemical Corp.*, 68 Wis.2d 487, 503, 228 N.W.2d 737 (1975). Further, this court has never held to the contrary.

The petitioner cites several cases for the proposition that printers are liable for the defamations they print. Beyond the fact that these cases do not deal specifically with printers, they also do not hold any participant in the publications process strictly liable for defamation. In *Arnold v. Ingram*, 151 Wis. 438, 138 N.W. 111 (1913), the defendant had actual knowledge of the defamation. The court in *Pfister v. The Sentinel Co.*, 108 Wis. 572, 84 N.W. 887 (1901), after noting that all persons engaged in publishing a defamation are to be held responsible, went on to acknowledge that the real test of responsibility for the tort turned on the scope of the defendant's involvement in the defamation. This requisite involvement hinges on whether the responsibilities were such that the defendant knew or should have known of the libel. *Id.* at 580. *Smith v. Utley*, 92 Wis. 133, 65 N.W. 744 (1896), reached the same result. In *Smith* a principal editor of a newspaper was held liable because it was "his business to know" of the defamation. *Id.* at 138.

For fault to exist the defendant must know or have reason to know of the libel. The affidavits in this case show that Port did not have actual knowledge of the alleged defamation. On that prerequisite to recovery, Maynard's claim against Port fails upon the record established. Had Maynard offered any proof that Port did have actual knowledge that the content of the newspaper was false, a material issue of fact would have been presented and summary judgment would have been inappropriate. Therefore, we must determine whether Port, despite its lack of knowledge of the falseness of the material involved, should have known about it.

Maynard contends that Port had a duty to know of the libel because, in refusing on two prior occasions to print certain materials, Port had assumed the duties of an editor or censor. We have previously discussed the significance of Port's refusal to print certain materials, concluding it would be unreasonable to infer from those two instances that Port exercised editorial control over the content of Take Over. Accordingly, those two instances in themselves could not give rise to a duty which would ordinarily be imposed upon one whose business it was to know of the material it published. *See: Smith v. Utley*, 92 Wis. at 138. But our inquiry does not end here. It must be recognized that Port, irrespective of the two previous refusals to print materials, actively participated in the publication of an allegedly defamatory publication. In providing offset printing services, Port was a vital link in the chain of events which resulted in the publication of the February 9–26 issue of Take Over.

We come then to the critical question on this review. Is Port Publications, by virtue of the contract printing services it provided to Take Over, subject to liability because of its failure to read and investigate material

submitted for publication in order to discover and censor any potentially defamatory material?

The court of appeals bases its decision on a constitutional privilege of contract printers or mere facilitators of the flow of information to print materials free of the threat of liability for defamation. We do not believe it necessary to reach the constitutional issue. Instead, we favor the approach of Judge Foley's concurrence to the court of appeals' opinion which is not addressed to any constitutional questions.

"Rather than holding that Port Publications had a privilege to publish defamatory material, Port instead should be granted an immunity from suit. We can effect this result by holding that Port Publications, as a contract printer independent from and exercising no control over the publication, has no duty to inspect for libelous content the material it contracts to print." Slip opinion No. 78–602, 1–2, filed August 17, 1979, Ct. App. (Foley, J. concurring).

Port, like other contract printers, provides a quick and inexpensive printing service that by its low cost allows access to the print media by groups that would otherwise not find such access. If liability for failure to inspect were imposed on printers like Port, they would of necessity become censors and their services would become more expensive. Increased costs might preclude the publication of small, low-budget newspapers. Such potential liability might also deter contract printers from contracting to print material they consider to be controversial. All of this would have a deleterious effect on the free dissemination of information which is fundamental in our society. It should be noted that in the past, before the development of the offset printing process which Port uses, a printer when setting print had contact with the content of what it printed. Port prints from photographic negatives which have already been

set in type and laid out on a page. To perform its operations, Port does not need to read the material or check its content in any way before it is printed. Contact with the content of a newspaper it prints is negligible. It is appropriate that this court acknowledge this changing technology and its effect on the responsibilities and duties of a contract printer in its decision today.

We note that our decision grants to no one a privilege to defame. But it does require that those who are held liable for defamation because of their role in the publication process must know or have reason to know of the existence of the libel. Port, as a contract printer, had no reason to know. Inasmuch as Port is entitled to judgment as a matter of law, the statutory criteria of sec. 802.08, Stats., are met, and we conclude that summary judgment in favor of Port was appropriate.

We are left only with Maynard's final contention that summary judgment is not appropriate in a case, such as this one, where the question of law to be decided is new or difficult. In support of that argument she cites *College Mobile Home Park & Sales v. Hoffmann,* 72 Wis.2d 514, 241 N.W.2d 174 (1976), and *Riley Construction Co. v. Schillmoeller & Krofl Co.,* 70 Wis.2d 900, 236 N.W.2d 195 (1975). These cases were decided under the old summary judgment procedure, outlined in sec. 270.635, Stats. 1973, which contemplated considerable discretion in the trial court. In determining when this court would disturb the trial court's exercise of that discretion, we stated in *Ramsden v. Hawkinson Gas Service Co.,* 63 Wis.2d 455, 459, 217 N.W.2d 322 (1974), "when it reasonably appears doubtful to the trial court as to what law should apply, especially when complicated facts exist, an order denying a motion for summary judgment will not be reversed." Even under this discretionary standard, however, we have noted that a trial court could

decide new issues, although it was not required to do so. *Taterka v. Ford Motor Co.,* 86 Wis.2d 140, 145, 271 N.W.2d 653 (1978). Under the mandatory language of sec. 802.08, Stats., we "no longer accord the trial court wide latitude in deciding to grant or deny summary judgment." *Wright v. Hasley,* 86 Wis.2d at 578. Nonetheless, the basic standard governing the appropriateness of the summary judgment procedure has not changed. Summary judgment is inappropriate where there is a genuine issue as to a material fact. The existence of a new or difficult issue of law does not, in and of itself, render the summary judgment mechanism inappropriate. Here the record provides an adequate basis for decision; a trial would make deciding the question of law no easier.

*By the Court.*—The decision of the court of appeals is affirmed.